Janie PASSEL et al., Appellants,

v.

**FORT WORTH INDEPENDENT SCHOOL DISTRICT et al., Appellees.**

No. 16889.

Court of Civil Appeals of Texas.

Fort Worth.

May 17, 1968.

Rehearing Denied June 21, 1968.

Garrett & Garrett, and Rufus S. Garrett, Jr., Fort Worth, for appellant.

Morgan, Gambill & Owen, and Cecil A. Morgan, Fort Worth, for appellee.

## OPINION

LANGDON, Justice.

This is a class suit, filed June 6, 1967, by Charles F. Passel and others, for themselves and their minor children, students in the Fort Worth Independent School District and members of high school fraternities and sororities or "charity clubs" and in behalf of all other parents and minor students similarly situated against the Fort Worth Independent School District and its Board of Education to enjoin the defendants from enforcing a rule adopted by the Board of Education on November

9, 1966, that required the parents of all students entering the junior and senior high schools in September, 1967, to sign a Supplementary Application for Enrollment Form certifying that the student was not a member and that he or she would not become a member of a high school fraternity, sorority or secret society.[1] The Supplementary Application for Enrollment Form is really nothing more than a restatement of Article 301d of Vernon's Ann. Texas Penal Code with an addendum added for the parent to certify that the student was not a member of an organization prohibited by the statute and that said student would not participate in the activities of such an organization.

Appellants asked for a declaratory judgment as to the constitutional validity of Article 301d, supra, as well as the Supplementary Application for Enrollment Form issued pursuant thereto. Appellants also sought to enjoin appellees from preventing their children from attending public high schools within the school district during the pendency of this suit and that upon final hearing, the temporary injunction be made permanent.

The Appellee School District answered by asserting a plea to the jurisdiction of the trial court on the grounds that appellants had not exhausted their administrative remedies before the Fort Worth Independent School District's Board of Education and before the Commissioner of Education and the State Board of Education as provided by Articles 2654–7 and 2656 Vernon's Ann.Civ.St. of Texas.

Appellants originally filed their suit in the United States District Court for the Northern District of Texas in which they sought substantially the same relief as prayed for herein. The Federal District Court denied an injunction and entered an order of abstention "until the courts of the State of Texas shall have been afforded the opportunity to determine the constitutional question here presented, and until the administrative remedies available to the plaintiffs have been utilized."[2] Appellees further asserted that the trial court was without jurisdiction until the plaintiffs had exhausted their administrative remedies as required by the order of the United States District Court.

---

1. The Supplementary Application for Enrollment Form required to be signed by the parents provides as follows:

   "SUPPLEMENTARY APPLICATION FOR ENROLLMENT
   "Fort Worth Public Schools
   "As required by the Board of Education in compliance with Article 301d, of the Texas Penal Code, which reads as follows:
   "Art. 301d. (P.C.) Fraternities, sororities and secret societies prohibited."
   Sections 1 through 7, both inclusive of this act are set forth in full in the form which is concluded in this manner:
   "All secret societies, including charity clubs, are included and prohibited.
   "I hereby certify that my son/daughter _____ is not now a member nor a 'pledge' of any club or organization as defined above and that he/she will not join nor participate in any way in the activities of such a club or organization.
   "Witness my hand this _____ day of _____, 19_____.
   "_____
   "Signature of Parent or Guardian Only"

---

2. Judge Suttle in his memorandum order staying further proceedings in the case held:
   "It is therefore ordered that further proceedings in this Court be stayed until the courts of the State of Texas shall have been afforded the opportunity to determine the constitutional questions here presented, and until the administrative remedies available to the plaintiffs have been utilized."

Appellees also filed a plea in abatement urging the failure of appellants to exhaust their administrative remedies and a motion to dismiss on the grounds that the School Board's Supplemental Enrollment Form was reasonable and in conformity with the law of Texas. Alternatively, appellees seek to uphold the constitutionality of Article 301d of the Penal Code as well as the Supplementary Application for Enrollment Form issued by the Board.

Appellees additionally filed a supplemental plea to the jurisdiction of the trial court on the grounds that the Supreme Court of Texas in Crouch v. Craik, 369 S.W.2d 311 and in City of Fort Worth v. Craik, 411 S.W.2d 541, had held that a court of equity was without jurisdiction to pass on the validity of a penal statute or regulation in the absence of showing of irreparable injury to vested property rights.

The trial court issued an opinion letter in which he found that the appellants had not exhausted their administrative remedies; that fact questions were involved; that the Supplemental Enrollment Form as well as Section 301d of the Penal Code were not unconstitutional on their face and entered a formal judgment holding that the court was without jurisdiction and that the appellants' application for temporary injunction be denied and the case dismissed.

Appellants assert ten (10) points of error upon which their appeal is predicated. Their first four (4) points urge the invalidity of Article 301d of the Penal Code on the grounds that it violates the First and Fourteenth Amendments to the Federal Constitution and Article 1, Sections 3, 19 and 27 and Article 7, Section 1, of the Texas Constitution, Vernon's Ann.St. Appellants claim their children have been deprived of freedom of association, a right to a free education; the right of parental control over the activities of their children; and they have been denied due process of law.

In points five (5) through eight (8) appellants say there is no fact issue involved and that they are not required to pursue their remedy through administrative boards because the constitutional issue involved is a matter for the courts to decide.

Finally, in points nine (9) and ten (10) appellants say that the trial court had the authority to grant injunctive relief of the penal statute involved because the Supplemental Enrollment Form did not invoke the penal provisions of the Statute and only required a condition to enrollment of the students.

We deal first with the question of exhaustion of administrative remedies. Appellee Independent School District presented evidence in the trial court designed to show that the activities of the "charity clubs" did in fact adversely affect the operation of the Fort Worth Independent School District. In fact, appellants also contended that the statute involved was not applicable to the charity clubs apparently on the ground that the activities of the clubs were wholly unrelated to school functions. It seems to us that the evidence does show that the activities of the clubs, at least with respect to athletics, had a disruptive influence. This was the import of the testimony of two high school football coaches in the public school system.

■ We doubt that the statute permits of any construction except that it precludes public high school students from membership in any fraternity, sorority or organization such as the charitable clubs involved regardless of whether their activities are conducted on or off the campus. Be that as it may, counsel for appellees and the appellants stipulated that the charity clubs involved fall within the statutory definition of Article 301d.[3] We therefore hold that the question involved is one of law and not of fact and that the appellants were not required to pursue their administra-

---

3. The constitutions of the various clubs involved provide for the election of members by secret ballot.

tive remedy through the school authorities under Articles 2654-7 and 2656, V.A.C.S. of Texas. Wilson v. Abilene Independent School Dist., 190 S.W.2d 406, 409 (Eastland, Tex.Civ.App., 1945, writ ref., w. o. m.).

We next consider the trial court's jurisdiction to pass on the constitutional validity of the penal statute involved. In the recent case of City of Fort Worth v. Craik, 411 S.W.2d 541 (Tex.Sup., 1967), our Supreme Court held that in only unusual cases could a court of equity pass upon the validity of a penal statute. We quote from the Court's opinion: "It is recognized that in unusual cases, a court of equity may declare a penal statute or ordinance unconstitutional or invalid although such invalidity has not been determined by a court exercising criminal jurisdiction. The rule is stated by the Court of Criminal Appeals in State ex rel. Burks v. Stovall, 168 Tex.Cr.R. 207, 324 S.W.2d 874 (1959), as follows: 'The constitutionality or validity of a penal ordinance is a question ordinarily within the exclusive jurisdiction of courts exercising criminal jurisdiction. However, courts of equity may enjoin the enforcement of a penal ordinance where the ordinance is unconstitutional and void, and its enforcement will result in irreparable injury to vested property rights. State ex rel. Flowers v. Woodruff, supra (150 Tex.Cr.R. 255, 200 S.W.2d 178); State ex rel. McNamara v. Clark, 79 Tex.Cr.R. 559, 187 S.W. 760; Kemp Hotel Operating Company v. City of Wichita Falls, 141 Tex. 90, 170 S.W.2d 217; Malone v. City of Houston, Tex.Civ.App., 278 S.W. 2d 204.'"

Although the Abilene case was decided several years prior to the promulgation of Article 301d and does not represent an authoritative expression by our Supreme Court in that a writ was refused, w. o. m., many of the same issues were present in that case as are present in the case at bar. The principal distinction between the two cases is that the pledge card required by the Abilene School District pledging students not to participate in any fraternity, sorority or secret organization was a prerequisite to the students' participation in extra-curricular and inter-school activities which included honors, medals and scholarships. In this case, the statute requires the suspension or expulsion of any pupil who shall remain in or join such organizations.

Many of the same constitutional arguments are made here that were made in the Abilene case. The Court of Civil Appeals at Eastland points out:

"In their brief, appellants insist that the action of appellee School Board in requiring junior and senior students in the Abilene High School to sign the pledge hereinabove set out, and attested by a parent or guardian, as a prerequisite to becoming eligible to participate in extra-curricular activities, hold class offices, graduate with honor and to receive medals, scholarships, etc., is in contravention of Article 1, Sections 3, 17 and 19 of the Constitution of Texas.

"* * *

"It is not clear to us what application, if any, said cited provisions of the Constitution have to the matter under review. They certainly do not contradict or limit Article 7, Section 1. If they are in anywise pertinent, following the well-recognized rule of construction, they should, if possible, be construed together in such way as to give force and effect to all. It is obvious that no such construction should be made as would limit or modify the mandate to the Legislature, 'to establish and make suitable provision for the support and maintenance of an efficient system of public free schools.'"

The Court held that the order requiring the pledge card was a reasonable exercise of administration control of the school system:

"But, necessarily, school boards are given a wide discretion in such matters. (Stu-

dent membership in fraternities and sororities.) They may make all such rules and regulations as in their judgment are necessary to maintain an 'efficient' system of schools, subject to the limitation that there be no abuse of discretion, and that such regulations be not arbitrary, unreasonable or in violation of law."

■ It is also to be noted that while there are some decisions to the contrary, the general rule is that a board of education or other school authority may forbid sororities, fraternities or other secret organizations such as charitable clubs here involved.

The subject is annotated in 27 A.L.R. 1074, beginning with this statement:

"The weight of authority is to the effect that rules by a board of education or other school authority, forbidding membership of pupils in so-called Greek-letter fraternities, and providing for punishment for violation by expulsion of the pupils or rendering them ineligible to participate in certain school activities, are valid. * * *" To the same effect see 134 A.L.R. 1275, supplementing the annotation in 27 A.L.R. 1074.

In 47 Am.Jur., p. 423, "Schools," § 169, the rule is stated as follows:

"Membership in Fraternities.—Statutes forbidding, or authorizing school authorities to forbid, membership of public-school pupils in fraternities or sororities are valid. Thus, while a student cannot be prohibited from joining and belonging to such organizations, the exclusion from the public schools of a pupil affiliated with a fraternity at another school is not unconstitutional.

"Even in the absence of express statutory regulation, rules by school authorities which forbid the membership of pupils in Greek-letter fraternities and provide for the exclusion from school of members or render them ineligible to participate in certain school activities are considered valid in most jurisdictions, although some authorities have taken a contrary view. Where such a rule is regarded as valid, a pupil may be expelled for its breach."

The following language is found in 79 C.J.S. Schools and School Districts § 499, Secret Societies, p. 446:

"* * *

"Statutes prohibiting the organization of fraternities, sororities, and other secret societies in the public schools and forbidding pupils from becoming members; making it unlawful for a pupil to belong to any school fraternity, and giving the school board power to suspend or expel a violator, and declaring it illegal to give an offender credit for a subject pursued or to graduate him; or authorizing school boards to abolish fraternities and sororities, or bringing fraternities within the regulatory power of the board, have been construed by the courts and held to be constitutional. * *"

Appellants also insist that they have been denied due process of law guaranteed by Section 1 of the Fourteenth Amendment to the Federal Constitution because Article 301d of the Texas Penal Code exempts certain organizations from its application and that there is no legitimate basis for the classification found in the statute.

It will be noted that classification for purposes of Article 301d is found in Sections 2 and 4 of the Act. In Section 2 it is provided:

"A Public School Fraternity, Sorority, or Secret Society as used in this Act is hereby defined to be any organization composed wholly or in part of public school pupils of public schools below the rank of College or Junior College as herein provided, which seeks to perpetuate itself by taking in additional members from the pupils enrolled in such school *on the basis of the decision of its membership* (emphasis added) rather than upon the free choice of any pupil in the school who is qualified by the rules of the school to fill the special aims of the organization." Section 4 provides in part: "* * * Providing that

the above restrictions shall not be construed to apply to agencies for Public Welfare, viz.: Boy Scouts, Hi-Y, Girl Reserves, DeMolay, Rainbow Girls, Pan-American Clubs, and Scholarship Societies, and other kindred educational organizations sponsored by the State or National education authorities."

█ It will thus be seen that the legislative purpose is not to include any educational organization which has standards or rules by which any student can qualify on the same basis as other students. But in the case of the charity clubs, it is admitted that the basis for membership is by the secret ballot of the clubs themselves rather than upon rules under which any student could qualify.

█ Recent decisions by the United States Supreme Court make it clear that states have a wide scope of discretion of permissible classification which will not be disturbed unless "invidious discrimination" is shown or unless the classification utilized is "palpably arbitrary." For example, in Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93, the Court declared:

"Statutes create many classifications which do not deny equal protection; it is only *invidious discrimination* (emphasis added) which offends the [Federal] Constitution."

In Phillips Chemical Co. v. Dumas School Dist., 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384, a case arising out of our Texas courts, the Supreme Court held:

"When a state is dealing with its own domestic concerns, and not trenching on the prerogatives of the national government, its power to classify is *extremely broad*, and its discretion is limited only by constitutional rights and by the doctrine that a classification may not be *palpably arbitrary*; * * *" (Emphasis added.)

In 1931 the Supreme Court of Michigan in Steele v. Sexton, 253 Mich. 32, 234 N.W. 436, 437, declared as follows:

"It was well said in University of Mississippi v. Waugh, 105 Miss. 623, 633, 62 So. 827, 830, L.R.A.1915D, 588, Ann.Cas. 1916E, 522: 'The fourteenth amendment to the Constitution of the United States was never intended to act as an accomplice to any young man who wanted to take advantage of the gratuitous advantages offered the youths to obtain an education, and yet refuse to obey and submit to the disciplinary regulations enacted by the Legislature for the welfare of the institutions of learning. The right to attend the educational institutions of the state is not a natural right. It is a gift of civilization, a benefaction of the law. If a person seeks to become a beneficiary of this gift, he must submit to such conditions as the law imposes as a condition precedent to this right. The act in question is not class legislation. It is quite the reverse, and seeks to destroy the possibility of the existence of any class at the educational institutions. No state or federal Constitution is violated by this act in any way. Complainant is not deprived of any constitutional right, unless complainant can be said to have a constitutional right to breach the discipline of the school and set at naught the laws of the state.' "

The opinion of the District Court of Appeals, Third District, California, in the case of Robinson v. Sacramento City Unified School District, 245 Cal.App.2d 278, 53 Cal.Rptr. 781 (1966), contains a very informative review of the history and development of secret societies, Greek-letter societies, fraternities, etc., and a review of the cases involving such organizations. See also Holroyd v. Eibling, 188 N.E.2d 208 (Ohio Com.Pl., 1961), affirmed 116 Ohio App. 440, 188 N.E.2d 797, 10 A.L.R. 3d 381 (Ct. of Appeals of Ohio, Franklin County, April, 1962), dismissed for the reason that no debatable constitutional question is involved, 174 Ohio St. 27, 186 N.E.2d 200 (1962).

Our Texas courts have upheld sex as a basis for legislative classification in two cases involving co-education at Texas A

& M University, Heaton v. Bristol, 317 S.W.2d 86 (Waco, Tex.Civ.App., 1958, err. ref.), cert. denied, app. dismd. 359 U.S. 230, 79 S.Ct. 802, 3 L.Ed.2d 765; Allred v. Heaton, 336 S.W.2d 251 (Waco, Tex.Civ. App., 1960, err. ref., n. r. e.) cert. dismd., app. denied, 364 U.S. 517, 81 S.Ct. 293, 5 L.Ed.2d 265.

In San Antonio Retail Grocers, Inc. v. Lafferty, 156 Tex. 574, 297 S.W.2d 813 (1957), the Supreme Court said:

"We recognize that the test is whether there is any basis for the classification which could have seemed reasonable to the Legislature. * * * Before we may strike it down it must appear that there is no reasonable relationship between the classes created and the purposes to be accomplished or the evils to be prevented."

▮ We believe there is a reasonable basis for the classification found in the statute and that there has been no such discrimination against the charity clubs so as to deny them due process of law.

▮ Appellants also argue that the statute involved is void because it is vague and uncertain as to the definition of a sorority, fraternity or secret organization. We do not understand from the record in this case that there is any dispute that the organizations here involved are covered by the statute. But from what has been said above, we believe that the statute is sufficiently clear. It must also be remembered that a court is required to uphold the constitutionality of a statute if it is possible to do so. The rule as stated in 53 T.J.2d, pp. 225, 226, "Statutes," Section 158:

"A court will always endeavor to interpret a statute so that it will be constitutional and valid, and will decline to adopt a construction that will destroy or nullify it, if by any reasonable construction the enactment can be sustained. Thus, it is settled that if an act is fairly capable of two constructions, of which under one it would be constitutional and under the other it would be invalid, the former must prevail. This means that all doubts will be resolved in favor of the validity of a statute, particularly where it has received long judicial and executive sanction or approval; and a court is not warranted in adopting a construction that renders an act invalid or of doubtful constitutionality, merely because it can be so construed, or because it may possibly operate in an unconstitutional manner."

▮ Appellees call attention to the fact that the Attorney General of Texas has three times been called upon to pass upon the validity of Article 301d and three times the Attorney General has declared the law to be constitutional.[3] The statute, of course, has been on the books for a number of years and while the Attorney General's opinions are not conclusive, we think they are entitled to some weight by the Court. The applicable rule of law is well stated in 53 T.J.2d, "Statutes," Section 176 at page 257:

"The contemporaneous, or practical, construction of an act, or, in other words, the construction put on a statute soon after its enactment by those who are charged with the duty of its enforcement, that is, executive and administrative officers and departments, as well as by the courts and the legislature, is worthy of serious consideration as an aid to interpretation, particularly where this construction has been sanctioned by long acquiescence."

▮ Even if we assume that the rights of appellants to attend the public schools are both civil rights as well as property rights, we are unable to see how those rights have been impinged in this case. The students involved have not been de-

3. (1) Opinion No. V–889, dated August 22, 1949, addressed to L. A. Woods, State Superintendent; (2) Opinion No. WW–1309, dated April 13, 1962, address-ed to Honorable Justin A. Kever; (3) Opinion No. C–631, dated March 7, 1966, addressed to Honorable J. W. Edgar.

nied the right to attend public schools. On the contrary, they have been accorded the same rights, privileges and immunities as all other students but the Legislature has declared the clubs to which appellants belong are "inimical to the public good." We think it well within the police power of the State to adopt standards to guide the administration of our public school system and we will not substitute our judgment for that of the Legislature or the School Board unless there is some element of willful or intentional discrimination or some real threat of injury to vested property rights.

The argument advanced by appellants which causes us the most concern is that the statute involved constitutes an invasion of the right of parental control over their children. Certainly neither the school system or the church or any other organization however well motivated should or could replace parents in the rearing of a child. We would not wish to say anything in this opinion which would weaken this basic and fundamental right. But we do not believe that requiring parents to sign the Supplemental Enrollment Form constitutes such an invasion of parental control as to render it constitutionally invalid. We believe that our duly constituted independent school districts with appropriate guidance from the Legislature should run our public school system. While the last thing we would wish to do is to interfere with the right of freedom of association or the civil rights of the students involved, we must maintain an orderly system of administration of our public schools.

For the foregoing reasons, we are unable to hold that the statute involved is unconstitutional on its face or that the enforcement thereof will result in irreparable injury to appellants' vested property rights. But in view of the Supreme Court's opinion in City of Fort Worth v. Craik, we do not expressly pass upon the constitutional validity of the penal statute or of the regulation issued pursuant thereto. This is a matter which should be passed upon by a court exercising criminal jurisdiction. Kemp Hotel Operating Co. v. City of Wichita Falls, 141 Tex. 90, 170 S.W.2d 217, 219 (Comm. of App., 1943, Op. adopted by Sup.Ct.).

We, therefore, hold that the trial court was without jurisdiction to issue a writ of injunction to prevent the enforcement of Article 301d or to stay the requirement that the Supplemental Enrollment Form be signed by appellants as a prerequisite to the enrollment of their children in the Fort Worth public schools. Since the trial court's formal judgment entered in this cause is not inconsistent with this opinion, it is hereby affirmed.