**Janie PASSEL et al., Appellants,**

v.

**FORT WORTH INDEPENDENT SCHOOL
DISTRICT et al., Appellees.**

No. 17100.

Court of Civil Appeals of Texas,
Fort Worth.

April 17, 1970.

Rehearing Denied May 15, 1970.

Garrett, Garrett & Callaway and Rufus S. Garrett, Jr., Fort Worth, for appellants.

Morgan, Gambill & Owen, and Cecil A. Morgan, Fort Worth, for appellees.

## OPINION

LANGDON, Justice.

This is a class suit on behalf of minors, all of whom are members of a charity club, and their parents seeking a judgment declaring that Article 301d of the Vernon's Ann.Texas Penal Code and the rules promulgated by the appellee based upon such Article are unconstitutional and for injunctive relief.

Our original opinion in this case sets forth in some detail the controlling issues which are here involved. Passel v. Fort Worth Independent School District, Tex. Civ.App., 429 S.W.2d 917 (1968). In reversing this court and the trial court and remanding the case the Texas Supreme Court said, "The case has not been tried on its merits, and is not ripe for the rendition of a final judgment. A temporary injunction is not warranted by the evidence in this record." Passel v. Fort Worth Independent School District, 440 S.W.2d 61 (1969).

Since the two opinions above referred to contain specific quotes from and references to the rules which were promulgated by the appellee and the statute upon which such rules are based there is no need to repeat them here.

The case was tried to the court without a jury. The many witnesses called upon to testify in person or by deposition included school personnel familiar with every facet of school life and many who were not associated with the school but who were familiar with the charity clubs and the organizations excepted by the statute.

The court made and filed findings of fact and conclusions of law most of which are set forth verbatim in its judgment.

In his preface to the findings of fact the court wrote as follows:

"I have concluded that plaintiffs and intervenors have failed to prove that Article 301d of the Penal Code is unconstitutional or that the administrative enforcement of the regulation adopted by the school board for the purpose of implementing this statute violates any of their constitutional rights.

"In Passel et al vs. Fort Worth Independent School District, et al, 440 SW2 61 (Supreme Court), the court held that on the record then before it the statute was not unconstitutional as applied to plaintiffs and indicated that the trial court should hear evidence to determine the aims and activities of the organizations excepted in Section 4 of Article 301d.

"The evidence was substantially the same at the hearing last week as it was at the injunction hearing in 1967 (There was just more of.it), except that some evidence was offered about the aims and activities of some of the organizations named in Section 4. (There was no evidence about Boy Scouts, Hi-Y, Girl Reserves or Pan-American Clubs.) Evidence was also offered in an attempt to show that at least some of the 'charity clubs' proposed to select members by a board of sponsors composed in part of mothers of active members.

"Plaintiffs and intervenors failed to prove that there was not a reasonable basis for the classification established by the legislature or that the exempting of certain organizations from the statute was palpably arbitrary. There was no evidence whatever that any of the exempted organizations had any effect whatever on the operation of the school system. The amending

of the constitutions and by-laws of some of the clubs fails to meet the requirements of Section 2 of the statute that any student who is qualified by the rules of the school to fill the special aims of the organization may join if he chooses to do so.

"I make the following findings of fact and conclusions of law which I suggest be included in the judgment in this case:

"1. This is a class suit on behalf of all minors who are members of a charity club and their parents.

"2. The original twenty-three plaintiffs in this case have all graduated from high school.

"3. The members of the class for whom the original suit was brought have graduated from high school.

"4. Intervenors are all still attending high school and became parties to this suit prior to the time the original plaintiffs graduated from high school.

"5. On November 9, 1966, the Board of Education of the Fort Worth Independent School District promulgated a rule prohibiting fraternities, sororities, secret societies (including charity clubs) from carrying on their activities in grades 7 through 12 in the Fort Worth Public Schools.

"6. To implement the rule enacted by the Board, a supplementary application was required by the parent or guardian of each student enrolled in grades 7 through 12. This form required that the parent or guardian certify that his son or daughter was not a member or pledge of any organization described in Article 301d, and that the child would not join or participate in the activities of such a club or organization.

"7. The original plaintiffs were members of a club prohibited by Article 301d. The intervenors are members of a club prohibited by Article 301d. The amended constitutions and by-laws of several of the clubs, including the Musagetes, provide that active members of such clubs shall be selected by a board of sponsors consisting, in part, of mothers of active members. Such amended constitutions and by-laws also provide that they may be amended by a vote of the active members. Such constitutions and by-laws do not provide that a pupil in any school who is qualified by rules of the school to fill the special aims of the organization may become a member of such organization upon his free choice. The Musagetes have not selected any members under the new constitution and by-laws and neither it nor any other 'charity club' has operated under amended constitution and by-laws. None of the 'charity clubs', including the Musagetes, has ever selected its members on the basis of the free choice of any pupil in a school who was qualified by school rules to fill the special aims of the organization.

"8. None of plaintiffs or intervenors has been denied enrollment in the Fort Worth Public Schools.

"9. Every student in the Fort Worth Public School system, including members and non-members of 'charity clubs', is afforded the same educational opportunities without discrimination.

"10. The activities of the 'charity clubs' have substantially and materially disrupted and affected the orderly operation of Arlington Heights High School, Eastern Hills High School and Paschal High School, all of which are high schools within the Fort Worth Independent School District.

"11. Prior to the time that the 'charity clubs' ceased to be active they engaged in activities similar in character to university fraternities, sororities and secret societies in the following manner: Interclub council, rush, pledge, parties, meetings, pins, similar dress.

"12. None of the organizations (Boy Scouts, Hi-Y, et cetera) exempted by the statute has in the past affected the orderly operation of the schools in the Fort Worth Independent School District, and none of such organizations has participated in school activities.

"13. Arlington Heights High School and Paschal High School each has societies and clubs sponsored by school authorities. Any student in each of the schools is eligible for membership in any one or all of such societies and clubs if he meets the special aims of the organization such as scholarship, member of a football team and the like."

An additional finding by the court was: "* * * the Court finds as a fact that the 'Charity Clubs' were not affiliated with, sponsored or supported by the administration of any school within the Fort Worth Independent School District."

The court made the following conclusions of law:

"1. The legislature alone determines the public policy for the state, and this court presumes that the legislature considered all of the facts which are in evidence when it enacted Article 301d of the Penal Code.

"2. Courts favor constitutionality of statutes and must presume that the legislative body has acted within its powers in enacting Article 301d.

"3. One who attacks the constitutionality of a statute must show that the statute is palpably arbitrary, and without reasonable basis.

"4. Plaintiffs and intervenors have failed to show by a preponderance of the evidence that the legislature had no reasonable basis for the classification established in Section 4, Article 301d, Penal Code, or that the enactment of the statute was palpably arbitrary.

"5. The classification set forth in Section 4 does not constitute an unlawful discrimination against plaintiffs and intervenors, nor does the act or any section thereof deprive plaintiffs and intervenors of any personal or civil right guaranteed to them by the state or federal constitutions."

The appellants by twenty-six (26) points contend that the court erred in making certain of the findings made by it and in refusing to make other findings. There are also "no evidence" and "contrary to the evidence" points.

We affirm.

We have once again examined the entire record in this case. We find and hold that there is ample evidence in the record to support each and all of the findings of the court and its judgment based thereon. No useful purpose can be served by a lengthy discussion of the evidence. It should suffice to say that as in most adversary proceedings there was evidence on both sides.

■ The trial judge was the sole judge of the credibility of the witnesses and the weight to be given their testimony. This court is bound by its findings and conclusions which find support in the evidence.

■ This court in its original opinion wrote in some detail concerning the constitutional aspects of this case. Reference is made to that opinion for the citation of and a discussion of the authorities pertaining thereto. Based upon those same authorities we find and hold that Article 301d is not unconstitutional as contended by the appellants.

In support of our holding we cite the following additional authorities. Antell v. Stokes, 287 Mass. 103, 191 N.E. 407 (1934), and Satan Fraternity v. Board of Public Instruction, 156 Fla. 222, 22 So.2d 892 (Sup.Ct. of Florida, 1945).

■ The Texas Supreme Court has held that the rule adopted by the appellees based upon the statute in question and to insure compliance with its provisions "should stand or fall with the statute." Passel v. Fort Worth Independent School District, 440 S.W.2d 61, supra. In holding as we do that the statute is constitutional, the rule promulgated by the appellee "should stand."

■ "The predominant interest of a school is to educate its students. If a particular type of conduct has the effect of

disrupting the learning atmosphere, it should be subject to regulation." Davis v. Firment, 269 F.Supp. 524 (U.S.Dist.Ct., E. D.La., New Orleans Div., 1967).

Many of the same questions posed by this appeal were raised and answered in the case of Satan Fraternity v. Board of Public Instruction, supra. The following language from that case is set forth as follows:

"It is quite true as contended by appellants that purely social activities should not be tinkered with by law but whether high school fraternities and sororities are purely social is a question of fact which the legislature has answered in the negative and we find no reason to disturb their finding. We cannot see that the question of state vs. parental control enters into the picture in any manner. The public school system has a very definite place in our scheme of things and the question in every case is whether or not the high school fraternity or sorority disrupts or materially interferes with that purpose. The cases here cited show conclusively that there has long been a feeling in this country that this question requires an affirmative answer, and the legislature has concluded the matter in this State.

"We find nothing in the act assaulted that trenches on due process, the right of assembly, equal protection of the law, or any other liberty guaranteed to appellants. It is at least far fetched to contend that high school fraternities and sororities are on a parity with religious organizations and fraternal societies such as the Masons, Elks, Odd Fellows, and others. The Church and the Masons are much older than the State and fostered education long before the State did and have never been charged with acts inimical to it.

"In conclusion, it is pertinent to state that none of our liberties are absolutes; all of them may be limited when the common good or common decency requires. Even freedom of religion, the most cherished of all our freedoms, has been limited. Davis v. Beason, 133 U.S. 333, 10 S.Ct. 299, 33 L.Ed. 637. Freedom after all is not something turned footloose to run as it will like a thoroughbred in a blue grass meadow. Freedom in a democracy is a matter of character and tolerance. The ideal recipient of it is one who voluntarily refuses to sacrifice the common good to personal passion.

"Tested by these criteria, we cannot say that the act and regulations in question are vulnerable to the assault made on them."

In our original opinion (429 S.W.2d 917) we cited and quoted from the case of University of Mississippi v. Waugh, 105 Miss. 623, 633, 62 So. 827, 830 L.R.A.1915D, 588, Ann.Cas.1916E, 522. Reference is made to the citation and the quotation appearing in that opinion. We previously cited the case of Robinson v. Sacramento City Unified School District, 245 Cal.App.2d 278, 53 Cal.Rptr. 781 (1966) for an informative review of secret societies such as are involved in this case.

"Among the things a student is supposed to learn at school (at least, such is my idea) is a sense of discipline. Of course, rules cannot be made by authorities for the sake of making them but they should possess considerable leeway in promulgating regulations for the proper conduct of students. Courts should uphold them where there is any rational basis for the questioned rule. All that is necessary is a reasonable connection of the rule with the proper operation of the schools. By accepting an education at public expense pupils at the elementary or high school level subject themselves to considerable discretion on the part of school authorities as to the manner in which they deport themselves. Those who run public schools should be the judges in such matters, not the courts. The quicker judges get out of the business of running schools the better. * * * Except in extreme cases the judgment of school officials should be final in applying a regulation to an individual case." Stevenson v. Wheeler County

Board of Education, 306 F.Supp. 97 (U.S. Dist. Ct., S.D.Ga., Dublin Div., Nov. 17, 1969).

We have considered all of the appellants' points of error, singly and collectively, and each is specifically overruled. On the basis of the facts contained in this record and the authorities as applied to such facts the judgment of the trial court is in all things affirmed.

Affirmed.