BASTROP INDEPENDENT SCHOOL
DISTRICT BOARD OF TRUSTEES,
Appellant,

v.

September M. TOUNGATE, Individually
and as Next Friend of Zachariah
Toungate, a Minor, Appellee.

No. 03–95–00200–CV.

Court of Appeals of Texas,
Austin.

May 8, 1996.

Rehearing Overruled June 19, 1996.

Eric W. Schulze, Walsh, Anderson, Underwood, Schulze & Aldridge, P.C., Austin, for appellant.

Charles Beall, III, Austin, for appellee.

Before POWERS, ABOUSSIE and KIDD, JJ.

KIDD, Justice.

Appellee September Toungate, on behalf of her minor son Zachariah, sought declaratory and injunctive relief in district court against appellant Board of Trustees for the Bastrop Independent School District ("the Board") after the Board suspended Zachariah for the length of his hair. Toungate argued that the Board discriminated against Zachariah on the basis of his gender because the Board's grooming policy permitted girls but not boys to wear long hair. The district court rendered judgment in favor of Toungate, granting declaratory relief, an injunction, and an award of attorneys' fees. The Board now appeals the district court's judgment. We will affirm.

## THE CONTROVERSY

The relevant events in this appeal took place during the 1990–91 school year. At that time, Zachariah Toungate was an eight-year old, third-grade student at Mina Elementary in the Bastrop Independent School District. For that school year, the Board had adopted the following grooming rule:

> Boys' hair must meet the following guidelines: The rear length must be no longer than to the bottom of a regular shirt collar. On the sides, the ear lobe must be visible. In the front, the length cannot be longer than the top of the eyebrows.

The Board concedes that this rule did not apply to girls.

Zachariah's hair style in the Fall of 1990 violated the Board's grooming rule because it included a thin pony-tail that extended below his rear shirt collar. After Zachariah came home with a note from his school stating that he was not in compliance with the grooming code, Toungate scheduled a meeting with Rebecca Smith, Zachariah's principal. When Smith informed Toungate that Zachariah's hair violated the grooming code, Toungate said she would not force Zachariah to cut his hair. Toungate offered to pin Zachariah's pony-tail above his collar or have him tuck it inside his shirt. Smith refused to deviate from the dress code and told Toungate that Zachariah could not return to school until he cut his hair.

After Zachariah had been suspended for approximately three days, Smith informed Toungate that Zachariah should return to school to begin his in-school suspension ("ISS"). While in ISS, Zachariah was isolated from other students. He received his lessons from a substitute teacher in a twelve-by-fifteen foot room in which the only windows were blocked by heavy paper. Zachariah had to eat lunch alone, take recess alone, and was not allowed to participate in physical education, music classes, or any other extra-curricular activities, including the school's winter holiday program in December 1990. After the school kept Zachariah in ISS for approximately four months, Toungate began home-schooling her son on the advice of a psychologist.

Toungate sued the Board in district court, seeking injunctive and declaratory relief against continued enforcement of the Board's hair-length rule, as well as compensatory and punitive damages for mental anguish. Toungate argued that the Board's rule discriminated against Zachariah on the basis of his gender in violation of the Texas Equal Rights Amendment ("ERA") and a Texas anti-discrimination statute. See Tex. Const. art. I, § 3a; Tex.Civ.Prac. & Rem.Code Ann. § 106.001(a) (West 1986). In October 1991, the district court granted summary judgment in favor of the Board on all claims. On appeal, this Court affirmed the portion of the judgment denying the damage claims on the basis of governmental immunity, but reversed and remanded the constitutional and statutory discrimination claims for factual development at trial. *Toungate v. Bastrop Indep. Sch. Dist.*, 842 S.W.2d 823, 828–29 (Tex. App.—Austin 1992, no writ). Following a jury trial in 1994, the district court rendered judgment in favor of Toungate, enjoined enforcement of the hair-length rule, and declared that the rule violated both the anti-

discrimination statute and the Texas ERA. The court also awarded attorneys' fees to Toungate under the authority of the Texas Declaratory Judgment Act. *See* Tex.Civ. Prac. & Rem.Code Ann. § 37.009 (West 1986). The Board now appeals.

## DISCUSSION

The last twenty-five years have witnessed an explosion of cases in which public school students have challenged hair-length and grooming regulations. Approximately 120 such cases were reported by federal courts alone between 1968 and 1988. *See* Laurence H. Tribe, American Constitutional Law § 15–15, at 1385 n. 14 (2d ed. 1988). As Justice Douglas noted twenty-three years ago: "Nothing is more indicative of the importance currently being attached to hair growth than the barrage of cases reaching the courts evidencing the attempt by one segment of society to control the plumage of another." *Ham v. South Carolina*, 409 U.S. 524, 529–30, 93 S.Ct. 848, 851–52, 35 L.Ed.2d 46 (1973) (Douglas, J., dissenting). School children have increasingly looked to hair length or style as an important aspect of personal identity, and school boards throughout the country have shown an intense interest in keeping male hair styles within narrow boundaries. Tribe, *supra*, § 15–15, at 1386–87.

The adoption of the Texas ERA in 1972 added an important new dimension to the public school hair-length controversy in this State: gender discrimination. The Texas ERA has no analogue in the federal constitution. Whereas the federal cases have addressed the issue under the rubric of the student's right to personal liberty,[1] the Texas jurisprudence has focused on the question of gender discrimination against male students.

*See Mercer v. Board of Trustees*, 538 S.W.2d 201, 203 (Tex.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). This appeal is one such gender discrimination case. Toungate asks us to hold that the Board's hair-length rule discriminated against Zachariah, on the basis of his gender, in violation of the Texas Constitution and a Texas civil rights statute. We will consider each of Toungate's arguments in turn.

### A. Constitutional Claim

■ Toungate argues that the Board's rule violates the Texas ERA, which provides: "Equality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin." Tex. Const. art. I, § 3a. The Board responds that Toungate's ERA claim is foreclosed by the Texas Supreme Court's recent decision in *Barber v. Colorado Independent School District*, 901 S.W.2d 447 (Tex.1995).

In *Barber*, the supreme court considered a high school student's challenge to a similar hair-length rule. The plaintiff, Austin Barber, was an adult student who brought a class action to challenge the rule under the ERA. *Id.* at 447. In rejecting Barber's claim, the supreme court declined to perform a constitutional analysis and refused to determine whether the rule violated Barber's rights under the ERA. Instead, relying on long-standing Fifth Circuit precedent,[2] the court enunciated a bright-line rule of abstention: no Texas court may act on an ERA challenge to a hair-length rule promulgated by a public primary or secondary school. *Id.* at 450. The supreme court reasoned that grooming rules for public school students must be resolved by school officials or parents. *Id.* Accordingly, the court held that

---

1. *See* Tribe, *supra*, § 15–15 at 1385–87.

2. *See Karr v. Schmidt*, 460 F.2d 609, 611 (5th Cir.) (en banc, divided 8–7), *cert. denied*, 409 U.S. 989, 93 S.Ct. 307, 34 L.Ed.2d 256 (1972). In *Karr*, the Fifth Circuit created a per se rule that public school hair-length regulations are not subject to constitutional challenge. *Id.* at 617. The court directed the district courts in all such claims to "grant an immediate motion to dismiss for failure to state a claim for which relief can be granted." *Id.* at 618. This abstention doctrine is unique to the Fifth Circuit; all other circuits pass

on public school hair-length rules using a constitutional standard that varies in its degree of deference to school administrators. Tribe, *supra*, § 15–15 at 1388 n. 32.

It is noteworthy that *Karr* involved only a federal constitutional claim and not a claim under the Texas ERA. The Texas ERA provision, with its explicit inclusion of sex as a protected category, has no federal counterpart and has long been interpreted to provide a higher level of protection against gender discrimination than the Fourteenth Amendment. *In re McLean*, 725 S.W.2d 696, 698 (Tex.1987).

hair-length rules in public primary and secondary schools do not warrant judicial intervention because courts cannot "use the Texas Constitution to micro-manage Texas high-schools." *Id.* at 447.

We find significant distinctions between *Barber* and this appeal. One is the important question of parental rights. Austin Barber was an adult high school student, not a minor. Though Barber's father, an attorney, assisted him in the litigation, Barber stood as the lead plaintiff in his own right, not through his parents. Therefore, the question of the rights accorded to Barber's parents never arose. In this appeal, however, Zachariah Toungate is a minor, and he appears only through his mother as next friend. This appeal can therefore be distinguished from *Barber* because it raises the important question of Toungate's right to direct Zachariah's upbringing.

The issue of parental rights is particularly significant given the supreme court's primary reason for its decision in *Barber*. The linchpin of *Barber* is the proposition that parents or local school officials should resolve questions of hair length, not the judiciary: "It is a matter of common sense that the state judiciary is less competent to deal with students' hair length than a parent, school board, administrator, principal or teacher." *Id.* at 450. In this appeal, as in many situations, parents and school officials do not always agree on the best course of action for the child. Unless the judiciary resolves these disputes between parents and school officials, the power to make decisions, including those of constitutional magnitude, will automatically be vested in school officials alone. Such a result is particularly troublesome in a situation, such as this appeal, that involves the bodily integrity of the child.[3]

The wishes of parents and school administrators may also conflict on a number of important issues, such as corporal punishment, compulsory education, and compulsory vaccination. Although courts normally accord considerable discretion to school boards in these areas, they have nevertheless addressed compelling constitutional issues presented by parents. *See, e.g., Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (corporal punishment); *Jacobson v. Massachusetts,* 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905) (compulsory vaccination); *Itz v. Penick,* 493 S.W.2d 506 (Tex.1973) (compulsory vaccination); *Hutton v. State,* 23 Tex.App. 386, 5 S.W. 122 (1887) (corporal punishment). The importance of judicial action on these issues cannot be disregarded when parents' rights do occasionally trump government decisions. *See, e.g., Wisconsin v. Yoder,* 406 U.S. 205, 234–35, 92 S.Ct. 1526, 1542–43, 32 L.Ed.2d 15 (1972) (parents' right to free exercise of religion trumped state compulsory education law); *Pierce v. Society of Sisters,* 268 U.S. 510, 534, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925) (parents may choose private school instead of public school).

This appeal may also be distinguished from *Barber* because of the drastic difference in the treatment of the two students. Zachariah Toungate's lengthy suspension in this appeal was far more onerous and intrusive than the Colorado I.S.D. Board's treatment of Austin Barber. Barber was never suspended from school, and the two brief periods he spent in ISS were unrelated to his grooming. Furthermore, Barber voluntarily agreed to cut his hair to appear in a community theater play. *Barber,* 901 S.W.2d at 449. In that factual context, Barber did not present a sufficient "affront to his constitutional rights" to merit judicial intervention. *Id.* at 450. Zachariah Toungate, who steadfastly refused to cut his hair, suffered a much more serious assault on his rights: the Board placed him in ISS for four months solely because of his hair length. The trial judge characterized

---

3. Courts have generally drawn a distinction between school rules affecting only dress and more intrusive rules requiring an alteration of bodily appearance. "A [hair-length] rule imposing such a significant invasion into the private lives of children and their parents requires a showing of greater justification and demonstrable need by the school board than one regulating purely in-

school appearance, such as a rule about lengths of skirts." *Barber,* 901 S.W.2d at 453 (Gammage, J., dissenting) (quoting *Independent Sch. Dist. No. 8 of Seiling, Dewey County v. Swanson,* 553 P.2d 496 (Okla.1976)); *see also Neuhaus v. Federico,* 12 Or.App. 314, 505 P.2d 939, 945 (1973).

ISS as tantamount to solitary confinement. Zachariah's educational experience shrank to a stigmatizing isolation and deprivation of all social activities. The experience had such a detrimental psychological impact on Zachariah that, on professional advice, Toungate removed him from public school altogether. Zachariah received far harsher treatment than did Austin Barber.

We find these distinctions between *Barber* and this appeal significant. However, the supreme court in *Barber* clearly held that the Texas judiciary may not act on an ERA challenge to a hair-length rule imposed by a public primary or secondary school board. *Id.* at 447. The distinctions discussed above do not warrant a departure from the clear holding of *Barber,* and we are bound to follow it in this appeal. Because *Barber* forecloses Toungate's constitutional claim, we hold that the trial court erred in granting a declaratory judgment that the Board's rule violates the Texas ERA.

### B. Statutory Claim

Toungate next argues that, apart from her constitutional claim, the trial court's judgment was proper because the Board violated the following provisions of a Texas anti-discrimination statute:

(a) An officer or employee of the state or of a political subdivision of the state who is acting or purporting to act in an official capacity may not, because of a person's race, religion, color, sex, or national origin:

. . . .

(4) refuse to permit the person to participate in a program owned, operated, or managed by or on behalf of the state or a political subdivision of the state;

(5) refuse to grant a benefit to the person [or]

(6) impose an unreasonable burden on the person. . . .

Tex.Civ.Prac. & Rem.Code Ann. § 106.001(a) (West 1986). Toungate argues that the Board violated each quoted provision of the statute because, by placing Zachariah in ISS for four months, the Board: (1) refused to let

him participate in the regular school program, (2) refused to grant him the benefit of extracurricular activities, and (3) imposed an unreasonable burden on him. The Board argues that *Barber* forecloses Toungate's statutory claim and that, in any event, Zachariah's ISS was justified by legitimate educational goals.

#### 1. Viability of the Statutory Claim

■ As a preliminary matter, the Board argues that *Barber* forecloses Toungate's statutory claim in this appeal. The Board reasons that the anti-discrimination statute is nothing more than a codification of the ERA and therefore must be subject to the abstention rule delineated in *Barber.*

We reject the Board's argument for two reasons. First, the supreme court stressed in *Barber* that the broad ERA protection could not be used to challenge a hair-length rule: "We refuse to use the Texas *Constitution* to micro-manage Texas high schools." *Barber,* 901 S.W.2d at 447 (emphasis added). Toungate, however, presents a claim based on a statute in which the Texas Legislature has specifically authorized remedies against discrimination by state government actors. The abstention required by *Barber* in an ERA challenge is grounded in the concept that decisions of parents or school officials should prevail over a broad constitutional protection. *Id.* at 450. The *Barber* analysis, therefore, does not apply to the specific and more narrowly drawn anti-discrimination statute at issue here.

Second, we reject the Board's argument that we should extend *Barber* to this appeal. The statute at issue here is not simply a restatement of the Texas ERA. Before the codification of the Civil Practice and Remedies Code, the provisions of section 106.001 of the code were located at article 6252–16 of the revised civil statutes. Article 6252–16 was first passed in 1967 as a civil rights statute designed to "further implement" the Federal Civil Rights Act of 1964. Act of April 18, 1967, 60th Leg., R.S., ch. 72, § 5, 1967 Tex.Gen.Laws 138, 139 (former Tex. Rev.Civ.Stat.Ann. art. 6252–16, since repealed and codified in relevant part at Tex. Civ.Prac. & Rem.Code Ann. § 106.001). At

the time of its passage, the statute protected against invidious discrimination on the basis of race, religion, color, or national origin. Former article 6252–16, § 1. In 1971, the statute was amended to include sex as a protected category. Act of June 15, 1971, 62nd Leg., R.S., ch. 989, § 1, 1971 Tex.Gen. Laws 2994. The Texas ERA was subsequently adopted on November 7, 1972. Tex. Const. art. I, § 3a.

The history of the statute shows that it was enacted as a state counterpart to the Federal Civil Rights Act of 1964, many years prior to the adoption of the ERA. Because the statute has a pedigree independent of the ERA, we hold that the *Barber* abstention rule does not apply to Toungate's statutory claim.

### 2. Application of the Statute

■ In our prior opinion remanding this cause for trial, we addressed the general parameters of Toungate's claim under the Civil Practice and Remedies Code. *See Toungate*, 842 S.W.2d at 827. We specifically addressed Toungate's claim, under section (a)(6) of the statute, that the Board imposed an "unreasonable burden" on Zachariah, on the basis of his gender, by placing him in ISS. *Id.* In response to the Board's argument that ISS could not be an unreasonable burden because it is allowed by statute, we noted that the reasonableness of punishment must be analyzed on a case-by-case basis because a general statutory authorization does not necessarily make punishment reasonable in any particular set of circumstances. *Id.; see* Tex.Educ.Code Ann. § 21.301(g)(1) (West 1987). The trial court determined that the Board's treatment of Zachariah was discriminatory and unreasonable under the circumstances of this case.

We must analyze the trial court's findings to determine whether it erred in holding that the Board's actions violated the statute. The trial court found that the Board's rule discriminated against Zachariah on the basis of his gender. The Board conceded that its hair-length rule applies only to boys and not to girls. If Zachariah were a girl, the Board

would allow him to wear the same hair style that led to his suspension. The Board's rule, therefore, discriminates against Zachariah on the basis of his gender. The Board nevertheless argues that its action was gender neutral because it punishes every student, male or female, who violates a grooming rule. The trial court, however, noted that Toungate does not charge the Board with uneven enforcement of the grooming code as a whole; instead, Toungate argues that the particular content of the hair-length rule discriminates against boys. We agree with the trial court's sound analysis of the issue and hold that the Board's hair-length rule discriminated against Zachariah on the basis of his gender.

■ However, the analysis of a gender discrimination claim does not end with a finding of discriminatory treatment. In our prior *Toungate* opinion, we noted that the evaluation of a discrimination claim requires that we weigh the "factors appropriate to the context. . . ." *Toungate*, 842 S.W.2d at 826. In a dispute between a student and a public school board, we must balance the student's and parents' rights against a general desire to accord broad latitude to school administrators. *Id.* We must therefore balance Zachariah's right to be free from gender discrimination against the Board's legitimate goal of providing a quality education to its students. *Id.* Disruption is the touchstone of this balancing analysis; we must determine whether Zachariah's assertion of his rights disrupts the Board's legitimate educational goals. *Id.; see Passel v. Fort Worth Indep. Sch. Dist.*, 453 S.W.2d 888, 892 (Tex.App.—Fort Worth 1970, writ ref'd n.r.e.).

The trial court found that the Board imposed an unreasonable burden on Zachariah because it subjected him to a lengthy in-school suspension although his hair style did not disrupt or interfere with the Board's legitimate educational goals. The Board placed Zachariah in ISS for *four months*. The trial court found that ISS was a form of discipline equivalent to institutional solitary confinement.[4] The Board placed Zachariah

---

4. The Board's treatment of Zachariah is reminiscent of the plight of Heman Sweatt, another

Texas student who was placed in educational solitary confinement because of a discriminatory

in a small classroom with heavy paper over the windows. Zachariah was not free to leave the small room. Zachariah was deprived of all contact with his fellow students and completely prohibited from participating in extracurricular activities. The trial court succinctly evaluated Zachariah's ISS: "To subject an eight year old to that isolation for four unbroken months is not only unreasonable as a matter of law, but it is unconscionable."

We must balance this heavy burden on Zachariah against any disruption to the Board's legitimate educational goals. The Board advanced a number of justifications for its hair-length rule, including security, gender identification, socialization, and discipline. The trial court found that Zachariah's hair style did not frustrate any legitimate educational goals. We examine each, in turn, as found by the trial court.

The Board argued that the grooming code was necessary to prevent a proliferation of gang activity in Bastrop County. The trial court found no evidence to justify the Board's concern. Zachariah Toungate was in the third grade at the time he was suspended. The Board failed to connect Zachariah or his hair style with gang activity or to show that gang activity was a concern for his age group, his school, or even the school district at the time Zachariah was placed in ISS. That trial court further noted that, even if the threat of gang activity could be conceded, the Board failed to show that a hair-length rule would be a reasonable response: "Without playing down the significant impact real gangs could have on any school district, the security goal simply cannot be stretched to justify the hair-length rule...."

The Board next argued that the rule is necessary to properly instill a sense of gender identity in schoolchildren. The trial court noted that a number of the Board's witnesses testified that "boys should look like boys and girls should look like girls." We agree with the trial court that this justification deserves short shrift because it is entirely repugnant to the gender discrimination protection provided by the statute. The trial court noted that the statement quoted above

is a perfect description of improper gender discrimination. We uphold the trial court's conclusion that gender identity is not a legitimate educational goal to support the Board's rule.

The Board argued that the rule may be justified for its "socialization" value. The trial court found that "socialization" amounted to teaching students to understand that society holds certain arbitrary norms and rules that must be obeyed for a person to succeed. The trial court found this goal to be actually counterproductive because it simply teaches a mindless conformity that is at odds with the tradition of tolerance and diversity in Bastrop County. Even if the need to teach conformity is acknowledged, however, the Board could have done so by means of rules that do not also discriminate on the basis of gender. The trial court concluded that the need to teach conformity cannot be justified "based on something as meaningless as hair length."

Finally, the Board argued that the rule is necessary to maintain discipline and prevent disruption in school. The trial court correctly noted that there can be "no debate" over the need for discipline and an orderly learning environment in public schools. We, too, acknowledge that a school rule necessary to prevent disruption is entitled to great deference when challenged. The trial court found, however, that the Board failed to demonstrate that the rule is necessary to maintain discipline or to prevent disruption. Two witnesses testified that they thought the rule was necessary for discipline but failed to give any reasonable basis for their opinions. Several of the Board's trial witnesses admitted that approximately half of the school districts in Texas do not have hair-length rules, and the trial court found no evidence that those districts experience a greater incidence of discipline problems. The trial court also specifically found that the Board failed to show that Zachariah's hair length actually caused any disruption or adversely impacted school discipline. Zachariah wore the same hair style during the previous school year without causing any disruption; ironically, the only

rule. *See Sweatt v. Painter,* 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114 (1950).

disruption came after the Board placed Zachariah in ISS. We also note that Toungate expressed her willingness to pin up Zachariah's pony-tail or have him tuck it underneath his rear shirt collar while at school. The trial court stressed that the Board's witnesses seemed uneasy when asked whether elimination of the rule would create disruption and answered only that it *might* do so. Though disruption certainly constitutes a valid justification in theory, the trial court found that the Board failed to justify a disciplinary concern in this case.

To justify the heavy burden imposed on Zachariah by its discriminatory rule, the Board must show at a minimum that the rule actually furthers legitimate educational goals. *See Toungate,* 842 S.W.2d at 826. The trial court found that none of the goals offered by the Board justified the rule. We hold that the trial court's well-reasoned decision and findings are amply supported by the evidence.[5] We therefore hold that the trial court did not err in finding that the Board violated section (a)(6) of the statute by imposing an unreasonable burden on Zachariah Toungate on the basis of his gender.

██ The trial court also found that the Board violated sections (a)(4) and (a)(5) of the statute, which prohibit the Board from refusing to grant a benefit or refusing to allow participation in a school program on the basis of a student's gender. *See* Tex.Civ. Prac. & Rem.Code Ann. § 106.001(a) (West 1986). As the trial court noted, the Board offers far more than the minimum educational requirements to its students; the Board's program includes a wide range of extracurricular activities to supplement the regular curriculum. While in ISS, Zachariah was not permitted to take part in any such activities. Because the Board offers extracurricular activities to its students as a matter of course, those activities comprise a part of the regular school program. Because those activities are offered in addition to the regular curriculum, they are also a benefit offered by the Board. Consequently, the Board deprived Zachariah

of a benefit and refused to let him participate in a regular school program by placing him in ISS. Therefore, we hold that the trial court did not err in finding that the Board also violated sections (a)(4) and (a)(5) of the statute.

## CONCLUSION

Although *Barber* does not permit judicial intervention in an ERA challenge to public-school hair length cases, the anti-discrimination statute at issue in this appeal does. We hold that the Board violated the statute by placing Zachariah Toungate in ISS for four months on the basis of his gender. Accordingly, we affirm the district court's judgment granting Toungate declaratory relief on her statutory claim, an injunction, and attorneys' fees.

POWERS, Justice, dissenting.

*Barber* holds for stare decisis purposes that hair-length disputes in the public schools lie outside the range of justiciable controversies. *Barber v. Colorado Indep. Sch. Dist.,* 901 S.W.2d 447, 450 (Tex.1995). The grounds given for this holding indicate its intended scope: the state judiciary is less competent than local school officials or parents to resolve such disputes, and the nature of the grooming interest involved does not justify the burden placed upon state courts should they be required to decide such questions of local administration.[1] *Id.* These grounds represent fundamental and important decisions of judicial policy. Nothing in *Barber* suggests they vanish in the face of a statutory claim (Tex.Civ.Prac. & Rem.Code § 106.001(a) (West 1986)) but reappear in response to a claim resting upon the Equal Rights Amendment (Tex. Const. art. I, § 3a). I cannot agree that the *Barber* policies are so ephemeral and its holding so restricted. It is true that *Barber* refers only to the Equal Rights Amendment, but this merely reflects the fact that the Amendment was the sole basis for the trial-court judgment enjoining

---

5. The trial court submitted findings to the jury but rejected the jury's responses as advisory only.

1. Even the Commissioner of Education may not revise the student-discipline decisions of a local school board. *See* Tex.Educ.Code Ann. § 7.057(e)(2) (Pamph.1996).

enforcement of the school district regulation. *Barber,* 901 S.W.2d at 449.

Because I so understand the *Barber* decision, I respectfully dissent. I would reverse the judgment below and order the cause dismissed for want of subject-matter jurisdiction.