**Mark WOODY and Roger Crues, Plaintiffs,**

v.

**CITY OF DALLAS, Defendant.**

Civ. A. No. 3:90–CV–1294–D.

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 19, 1992.

David K. Watsky of Gillespie, Rozen & Tanner, P.C., Dallas, TX, for plaintiffs.

Craig Hopkins, Asst. City Atty., Dallas, TX, for defendant.

## MEMORANDUM OPINION

FITZWATER, District Judge.

Plaintiffs Mark Woody ("Woody") and Roger Crues ("Crues") sue defendant City of Dallas ("City"), contending the City is liable for terminating them from employment. The court tried the case in a bench trial on November 16 and 17, 1992. For the reasons that follow,[1] the court finds in favor of the City.

### I

The City hired plaintiffs Woody and Crues in 1988 for employment with the Dallas Fire Department. Each was assigned to Recruit Class 88–226 ("Class 226") at the Dallas Academy of Fire Fighters. On December 5, 1988 they were classified as Apprentice Fire and Rescue Officers ("Apprentice F & ROs"), and began training for permanent employment as Fire and Rescue Officers ("F & ROs"). Both plaintiffs graduated from the Fire Academy on April 28, 1989. PTO Stip. No. 4. On July 29, 1989 the plaintiffs advanced from the classification of Apprentice F & RO to Probationary Fire and Rescue Officer ("Probationary F & RO"). *Id.* No. 7. They began a six-month probationary period at that time. *Id.*

Prior to their advancement from Apprentice F & RO, however, the Chief of the Fire Department issued a May 26, 1989 memorandum that required all members of Class 226 to "successfully complete paramedic training before advancing out of probationary status." PX 4. The memorandum also

specified that Class 226 would be enrolled in the July 1989 emergency medical technician ("EMT") class and the January 1990 paramedic class. It further provided that if the probationary period had to be extended until paramedic training was completed, "this will be done as the need occurs." *Id.* EMT and paramedic training are two stages of emergency medical services ("EMS") training. EMT training is the first level and paramedic training is the second. Certification as a paramedic is a higher level than is certification as an EMT. The school that provided EMS training to Fire Department members limited the size of paramedic training classes. PTO Stip. No. 8. It was not possible for all members of Class 226 to complete the paramedic training course prior to the end of the six-month period that the plaintiffs had originally been scheduled to serve as Probationary F & ROs. *Id.* The Fire Department reinstated the paramedic training requirement as a condition of permanent employment because of a demand for paramedics. *See* PTO Stip. No. 5.

By memorandum dated October 27, 1989 the Fire Department Chief requested from the Secretary of the City Civil Service Board approval for adding six months to the probationary period of Class 226. PX 11. Class 226 was scheduled to complete probation on January 28, 1990. *Id.* This extension adjusted the date for probation completion to July 28, 1990. *Id.* The Secretary issued a January 11, 1990 memorandum extending the probation period to July 28, 1990. PX 15. The parties have stipulated that the Board approved the six-month extension of probation. PTO Stip. No. 10. It is undisputed that the Civil Service Board neither approved nor disapproved successful completion of paramedic training as a condition of advancement out of probationary status.

The Fire Department notified both plaintiffs by January 16, 1990 letter "that the Civil Service Board has approved extending your probationary period for an additional

---

[1]. The court sets out in this memorandum opinion its findings of fact and conclusions of law.

*See* Fed.R.Civ.P. 52(a).

six (6) months." PXS 17 and 18. The letters reiterated the provision of the Fire Department Chief's May 26, 1989 memorandum that "[e]ligibility to advance from probationary status is dependent upon your successful completion of paramedic training." *Id.*[2]

Following successful completion of EMT training, plaintiffs entered paramedic training on January 15, 1990. *See* PXS 24, 30. Plaintiffs did not enter paramedic training until that date due to class size restrictions. *See* PTO Stip. No. 8. On April 4, 1990 each took the paramedic final examination. Both failed to make a passing grade on one of the required sections, thus failing the examination. On April 5, 1990 the Fire Department terminated both plaintiffs' employment, citing their failure to complete paramedic training and, in turn, to successfully complete the Probationary F & RO phase of their training before advancing to the rank of F & RO. *See* PXS 26 and 34. Each plaintiff sought to appeal his termination, to appeal the paramedic final examination, and to retake the examination. The City declined to consider the appeals, relying on plaintiffs' status as probationary employees. The EMS training coordinator denied plaintiffs' appeals. The EMS Appeal Committee declined to allow plaintiffs to retake the examination.

## II

Plaintiffs bring the present action against the City, alleging (1) they are entitled to a declaratory judgment that their rights under the City Charter, City Personnel Rules, and City Civil Service Rules were violated when their probation was illegally extended and they were denied the rights to be terminated for just cause, to retreat, and to an administrative appeal, and are entitled to a declaratory judgment that Chapter XVI, § 10(b) of the City Charter is void for vagueness; (2) they were denied substantive due process of law under the United States and Texas Constitutions when they were terminated without just cause, in violation of their property or liberty interests; (3) they were denied procedural due process when the City failed to provide them with a pretermination hearing and post-termination appeal; (4) they were deprived of equal protection under the United States and Texas Constitutions when the City illegally extended plaintiffs' probationary period for six months in violation of the City's Rules; (5) their rights under 42 U.S.C. § 1983 were violated; and (6) the City violated City Charter Chapter XVI, § 10(a) when it extended their probationary terms an additional six months without legal authority.

In a July 20, 1992 memorandum opinion and order, the court granted the City's motion for partial summary judgment as to certain of plaintiffs' claims. As a result, plaintiffs' claims for a "violation" of 42 U.S.C. § 1983, denial of due process based on an alleged liberty interest, and denial of equal protection were dismissed prior to trial. The remaining theories of recovery were tried to the court.[3]

## III

The court begins with plaintiffs' declaratory judgment claim (except void for vagueness claim), due process claims, and claim that the City violated City Charter Chapter

---

**2.** Plaintiffs contend the Fire Department's use of the phrases "advance from probationary status" or "advancing from probationary status" did not give Class 226 members notice that successful completion of paramedic training was a condition of employment. The court disagrees. The evidence at trial demonstrated clearly that Probationary F & ROs knew they could be terminated for any or no reason, and that if a Probationary F & RO did not advance to the class of F & RO, the alternative was termination from employment. The court finds that Class 226 members had adequate notice that successful completion of paramedic training was a condition of permanent employment.

**3.** Certain of the findings and conclusions that the court enters today are inconsistent with the determinations made by the court in denying summary judgment. Today's opinion, of course, controls. After a trial, the court has the benefit of an entire evidentiary record and is permitted to make findings and draw inferences without regard to a party's status at the summary judgment stage. Moreover, in *denying* summary judgment the court has not bound itself to a particular view of the evidence or the law applied to the evidence, as it may be affected by a fuller understanding of the facts.

XVI, § 10(a). These theories of recovery are related, because if the City properly terminated the plaintiffs during a period of probationary employment, the City did not violate the Charter or its Rules, plaintiffs were not deprived of rights conferred by the Charter and Rules, and plaintiffs did not have a property right that would give rise to a due process claim under the United States or Texas Constitutions.

### A

Plaintiffs contend [4] the City did not properly extend their period of probation. They argue that Dallas City Charter Chapter XVI, § 10(b), City Personnel Rule § 34–11(a), and City Civil Service Rule X, § 9(b) permit probationary periods to be extended only under Civil Service and Personnel Rules to permit six months of on-the-job work performance or completion of any written prerequisites to employment or promotion. They contend their probation was not extended for a permissible purpose. Plaintiffs assert that if their probationary period was extended for a permissible purpose, they nevertheless were not obligated to complete paramedic training as a prerequisite for advancing from the rank of Probationary F & RO to F & RO. They base this contention on a pre-hiring certificate that each of them signed, in which each pledged to apply himself to paramedic training. They also reason that Civil Service Rule XIV, § 4(B)(1)(c) specifies that one who has completed a six-month service period as a Probationary F & RO may advance to the rank of F & RO "without further examination." They argue the paramedic final examination that they failed, and that caused their terminations, was an examination that this Rule excuses them from passing. Plaintiffs also posit that the EMS training requirement was improperly imposed because it was a promotional requirement and, under Civil Service Rule XIV, § 4(B)(3), only the Civil Service Board has the authority to establish promotional requirements. Plaintiffs point out that the Board did not approve the EMS require-

ment, only the six-month extension of probation. Plaintiffs also rely on evidence that other fire fighters failed EMT or paramedic training, but were not terminated, as proof of the illegality of their terminations.

The City argues that plaintiffs were Apprentice F & ROs when the EMS training requirement was imposed and thus had no property right in their positions. It contends the Fire Department, not the Civil Service Board, had the authority to modify a training/job performance requirement such as successful completion of EMS training. The City argues the Fire Department was only obligated to, and did, obtain the Civil Service Board's approval to extend the six-month period of probation. The City asserts the EMS training requirement was an entry-level, not promotional, requirement. It posits that the phrase "without further examination" contained in Rule XIV, § 4(B)(1)(c) refers to a civil service examination, not a paramedic training examination of the type administered to plaintiffs.

### 1

▪ The City Charter, Civil Service Code, and Personnel Rules permit probationary periods to be extended for completion of any written prerequisites to employment. The Fire Department requested Civil Service Board approval to extend the probation period for Class 226 for six additional months so that class members could complete paramedic training, take a written examination, and the results of the written test could be received before the probationary period ended. *See* PX 11. The Civil Service Board granted the six-month extension. PX 15. The Fire Department made the request on October 27, 1989 and the Secretary of the Civil Service Board granted written approval on January 11, 1990. On both these dates, plaintiffs were Probationary F & ROs, and had not yet completed the unchallenged six-month period of probation that commenced July 29, 1989.

**4.** Plaintiffs do not advance these arguments in the sequence stated. Nevertheless, a fair understanding of their arguments and proposed findings and conclusions, and of the issues in the case, supports the ordering of the contentions in this fashion.

The court finds that plaintiffs' probation was extended in order to complete a written prerequisite to employment within the meaning of the applicable Charter and Rules provisions. The court concludes the City did not violate the Charter or Rules when it extended plaintiffs' probation for this purpose.[5]

### 2

■ Plaintiffs urge that if their probation was extended for a permissible purpose, the pre-hiring agreement that each of them signed limited the City's authority to condition permanent employment upon successful completion of paramedic training.

The evidence shows that each plaintiff signed a certificate by which he affirmed that his answers to employment questions were true and correct. Included in the certificate was a "pledge" that, if "accepted as a Fire and Rescue Officer, I will assume the responsibility of completing EMS training. Furthermore, I will apply myself to this added responsibility to the very best of my ability." PXS 1, 2. This pledge represented the intent of Crues and Woody, and an expectation on the part of the City. It did not restrict the City from imposing employment requirements of greater scope than that to which the plaintiffs had pledged. Moreover, the certificate specifically assumed that each plaintiff's pledge took effect if he was "accepted as a Fire and Rescue Officer." *Id.* Plaintiffs implicitly recognize this distinction. *See* Ps.Prop.Concl.Law No. 12 (responsibility of completing EMS training applicable only if plaintiffs accepted as F & ROs). The pledge did not expressly preclude the City from exacting a more onerous EMS requirement *before* the plaintiffs achieved F & RO status. Nor did the pre-hiring certificate create a property interest.

### 3

■ Plaintiffs argue that if their probation was properly extended, Civil Service

Rule XIV, § 4(B)(1)(c) specifically provides that a Probationary F & RO who has successfully completed six months of service is entitled to advance to the rank of F & RO "without further examination." They contend the paramedic final written test was such an examination.

The court concludes that § 4(B)(1)(c)'s reference to an examination is to a promotional examination, *see* § 4(B)(1), not an examination of the type involved in the present case. The phrase "without further examination" used in § 4(B)(1)(c) is intended to excuse Probationary F & ROs from taking a form of examination in which they compete directly with other persons for placement on the eligible list for a specific position in the classified service. *See* § 4(B)(5). By way of example, if § 4(B)(1)(c) did not excuse such an examination, ten eligible Probationary F & ROs could be required to compete for one available F & RO position. Instead, § 4(B)(1)(c) effectively provides that if all ten successfully complete their probationary status, all will advance to the rank of F & RO. They will not be given a promotional examination and placed on the eligible list for selection. The purpose of the "without further examination" provision in Rule XIV, § 4(B)(1)(c) is to eliminate competition at this stage in the process. The court concludes the City did not violate § 4(B)(1)(c) when it conditioned completion of probation on passing the paramedic written examination.

### 4

■ Plaintiffs also argue that only the Civil Service Board had authority to establish a promotional requirement. Because the Board approved only the extension of probation, but not the specific EMS policy adopted by the Fire Department, plaintiffs contend the City unlawfully imposed successful completion of paramedic training as

---

**5.** Plaintiffs offered evidence that their fire station supervisors had recommended them for permanent employment. These recommendations were not binding on the City because the period of probation was lawfully extended to require completion of EMS training, including a final examination. The supervisors responsible for plaintiffs' EMS training recommended termination. The station supervisors' recommendation did not confer a property right upon the plaintiffs.

a condition for advancing out of probationary status.

Civil Service Rule XIV, § 4(B)(3) provides that "[t]he Civil Service Board shall have the right to establish promotional requirements for any new class that might be established and any class now established which might be changed so as to affect the relationship with other classes." This Rule confers rights upon the Civil Service Board with respect to (1) new classes established in the future and (2) classes already established that are in some way changed to an extent than it affects the class's relationship with other classes. During the time period relevant to this lawsuit, the class of Probationary F & RO was already established. The first clause of § 4(B)(3) is therefore inapposite. The second proviso is also irrelevant, because the Probationary F & RO classification was not changed in any way during the time period in question. The court concludes the Civil Service Board was not obligated by § 4(B)(3) to approve the Fire Department's EMS policy. The City did not violate § 4(B)(3) when it effected the EMS requirement as a condition for successful completion of probation.

### 5

■ Plaintiffs also rely upon evidence that other fire fighters who did not complete EMS training were either not disciplined or were disciplined much less severely than the plaintiffs. They contend this demonstrates that the City violated its own Charter and Rules when it terminated them.

The evidence shows that each fire fighter whom plaintiffs offered as a comparative case was a permanent-employee F & RO at the relevant time that discipline was imposed. These officers had property rights in their employment, and their cases are therefore distinguishable. The City does not have a custom, policy, or practice of allowing probationary employees to advance to F & RO without successfully completing all training requirements. The court declines to find on the basis of the evidence presented that plaintiffs are entitled to prevail in this case.

### B

■ Plaintiffs urge that if they did not successfully complete a lawfully-extended period of probation, based on an EMS requirement that the City properly imposed, they nevertheless had the right to retreat to the position of Apprentice F & RO.

Personnel Rules § 34–11(c) and (d), respectively, define initial and promotional probation. Promotional probation applies only to "probation required to be served after a promotion." Rule § 34–11(d). In order for plaintiffs' theory to succeed, the court must find that plaintiffs were promoted from the class of Apprentice F & RO to the class of Probationary F & RO.

The court is unable to make this determination in plaintiffs' favor. According to the evidence, the Apprentice F & RO and Probationary F & RO classes are both probationary classifications. They represent different stages of a prospective F & RO's training. The City classifies them separately to differentiate between compensation and stages of training. Civil Service Code Rule XIV, § 4(B)(1)(a) specifically refers to an Apprentice F & RO as one who is undergoing a "training and qualification period." The court holds that an employee has no right under City Personnel Rules or the Civil Service Code to retreat to a probationary training classification that is preparatory to permanent employment status. Under the applicable Rules, one is not promoted to Probationary F & RO when he successfully completes the training and qualification period for an Apprentice F & RO. Plaintiffs therefore had no right to retreat to the Apprentice F & RO classification and had no property right either in the classification of Probationary F & RO or of Apprentice F & RO.

### C

Having determined that the City lawfully terminated the plaintiffs under its own Charter and Rules, it follows that plaintiffs are not entitled to a declaratory judgment that the City violated the rights that the Charter and Rules conferred upon them, or that they were denied a right to be termi-

nated for just cause, to retreat, or to an administrative appeal.[6]

The court now considers whether plaintiffs have proved a denial of due process under the United States or Texas Constitutions.

■ The Due Process Clause of the Fourteenth Amendment protects against deprivations of life, liberty, or property without due process of law. *See Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Board of Regents v. Roth,* 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. at 2709. Plaintiffs' federal due process claim depends on their having a constitutionally protected property right in continued employment. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). Property interests are not created by the Constitution. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Instead, "[p]roperty interests are often expressly created by state statutes or regulations, but they can also arise from written or unwritten state or local government policies or from 'mutually explicit understandings' between a government employer and employee." *Stana v. School Dist. of Pittsburgh,* 775 F.2d 122, 126 (3d Cir.1985) (citing *Perry v. Sindermann,* 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–700, 33 L.Ed.2d 570 (1972)). Plaintiffs must show a specific property interest for a substantive due process claim as well. *See Neuwirth v. Louisiana State Bd. of Dentistry,* 845 F.2d 553, 558 (5th Cir.1988).

■ The Due Process Clause of the Texas Constitution is contained in Article I, § 19. *See* Tex. Const.Ann. art. I, § 19

(West 1984). Under the Texas Constitution, a person must have a vested property right in employment to be entitled to due process. *See Alford v. City of Dallas,* 738 S.W.2d 312, 315 (Tex.App.1987, no writ) (citing *City of Amarillo v. Hancock,* 150 Tex. 231, 239 S.W.2d 788, 791 (1951)).

■ The court has found above that plaintiffs were probationary employees of the Fire Department at the time they were terminated. They had no property right in permanent employment, whether based upon state or city statute or regulation. The court does not find from a preponderance of the evidence any written or unwritten state or local policy, or a mutually explicit understanding between the City and the plaintiffs, to which plaintiffs can affix a property interest. It therefore follows that their due process claims must fail.

### D

Plaintiffs also contend the City's actions violated City Charter Chapter XVI, § 10(a). Section 10(a) provides:

> Appointments or promotions of city officers and employees in the classified and unclassified service shall not be deemed complete until a period of six months shall have elapsed. A probationer may be discharged, suspended or reduced within said period by the city manager, or the head of the department in which said probationer is employed without right of appeal.

The court cannot find any basis in the evidence to hold that the City violated the second sentence of this provision. It is not clear that plaintiffs have even alleged a violation of the first sentence. To the extent plaintiffs rely on that sentence for the contention that their probation could last no more than six months, the court rejects the argument for the reasons already stated. The court does not find any other basis in the evidence to conclude the City violated § 10(a) in this case.

---

**6.** Plaintiffs have adverted to a "breach of contract" claim. To the extent such a claim is

properly in the case, plaintiffs have failed to prove the City breached any contract with them.

## IV

The court turns finally to plaintiffs' contention that City Charter Chapter XVI, § 10(b)[7] is void for vagueness under the United States and Texas Constitutions.

■■■■■ Under the United States Constitution, as applied to a civil[8] charter provision, a statute that forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ at its application violates the first essential of due process of law. *Roberts v. United States Jaycees,* 468 U.S. 609, 629, 104 S.Ct. 3244, 3256, 82 L.Ed.2d 462 (1984). Under Texas law, "[a] statute is fatally vague only when it exposes a potential actor to some risk or detriment without giving him fair warning of the nature of the proscribed conduct." *Texas Liquor Control Bd. v. Attic Club, Inc.,* 457 S.W.2d 41, 45 (Tex.1970) (applying principle to administrative agency regulation of private clubs). Moreover, under Texas law a court will endeavor to interpret a statute so that it will be constitutionally applied. *Passel v. Fort Worth Indep. Sch. Dist.,* 429 S.W.2d 917, 924 (Tex.Civ.App.1968) (stating principle in context of void for vagueness analysis of state penal statute), *rev'd on other grounds,* 440 S.W.2d 61 (Tex.1969).

Plaintiffs have not demonstrated that City Charter Chapter XVI, § 10(b) is unconstitutionally vague. A person of common intelligence can determine what "on-the-job work performance" or "completion of any written prerequisites to employment" is without being required to guess. Section 10(b) gives persons fair notice of permissible purposes for extending probationary periods. It is not unconstitutionally vague.

\*        \*        \*

The court holds that plaintiffs are entitled to no relief based on any of their claims. The court has today filed a judgment in favor of the defendant.

---

7. In Ps.Prop.Concl. No. 20, plaintiffs contend "the applicable Rules and Regulations are void for vagueness." In the pretrial order, plaintiffs state that they "challenge a provision of the City Charter as void for vagueness." PTO at 3. *Cf. id.* at 9 (contested issue of law No. 6) (challenging City Charter and Personnel and Civil Service Rules as "void and unenforceable"). Although the complaint is superseded by the pretrial order, the causes of action set out in the complaint refer only to City Charter Chapter XVI, § 10(b) as being void and unenforceable. *See* Compl. at 6 and 8. The court concludes the only void for vagueness argument properly presented by the plaintiffs is addressed to § 10(b).

8. Plaintiffs do not contend that § 10(b) should be judged under the standard applicable to a statute with criminal consequences.