**Austin David BARBER et al., Petitioners,**

v.

**COLORADO INDEPENDENT SCHOOL DISTRICT, Respondent.**

No. 94–0054.

Supreme Court of Texas.

Argued Nov. 16, 1994.

Decided June 22, 1995.

Pat Barber, Colorado City, James C. Harrington, Austin, for petitioners.

T.L. Rees, C. Michael Ratliff, Colorado City, for respondent.

GONZALEZ, Justice delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and HIGHTOWER, HECHT, CORNYN, ENOCH and OWEN, Justices, join.

This is a class action challenging the legality under the state constitution of hair length and earrings restrictions imposed by Colorado Independent School District (CISD) upon its male high school students. The trial court held that CISD's grooming code violated the Texas Constitution and granted a permanent injunction against the school district, prohibiting enforcement of the regulations. The court of appeals reversed the judgment of the trial court, holding that judicial intervention was inappropriate in this case. 864 S.W.2d 806. We refuse to use the Texas Constitution to micro-manage Texas high schools. Therefore, we affirm the judgment of the court of appeals.

In 1992, Austin Barber was an eighteen-year-old high school senior in Colorado City, Texas. CISD's school rules included the following regulation:

The District's dress code is established to teach grooming and hygiene, instill discipline, prevent disruption, avoid safety hazards, and teach respect for authority. **Boys may wear hair to the bottom of the collar, the bottom of the ear and combed out of the eyes. Boys may not wear earrings of any kind.** Caps and hats not a part of women's formal attire may not be worn in the building. Sudden, unbecoming fashions or anything designed to attract undue attention to the individual or activities are not acceptable. These guidelines are subject to administrative discretion. Extra-curricular organizations may impose a more stringent dress code.

(*Emphasis added.*) Barber and his family had a contrary view about whether he was required to observe CISD's grooming policy. They notified the school board that Barber had reached the age of majority and requested that CISD suspend enforcement of the grooming regulation as to him and other students aged eighteen and over. They stated that the regulation's restrictions for males regarding hair length and earrings violated Barber's fundamental constitutional rights because the policy did not apply to female students. They concluded that if CISD did not exempt Barber and other adult males from the regulation, they were going to sue. By a 4–to–2 vote, the CISD board members refused to suspend enforcement of the regulation.

Consequently, with the assistance of his father, an attorney, Barber brought a class action against CISD to enjoin its enforcement of the regulation. Barber challenged the constitutionality of CISD's dress code regulation as it pertains to adult male students. Over CISD's objections, the trial court certified the class as all male students attending CISD schools who were eighteen years of age at the time of suit and in the future. Over CISD's objections, the trial court designated Barber the class representative. The case was tried to the court without the benefit of a jury. A summary of the evidence presented at trial follows.

O'Henry Young testified that he has been an attorney for thirty years and has served as a member of the Abilene Independent School Board for many years. He compared Abilene ISD grooming and dress codes to CISD's and stated that Abilene ISD chose to "get out of the hair business," in part because the school board was unsure whether it could legally regulate this area. He did not think that CISD's regulation served a useful purpose.

Gary Paterson, the principal of Snyder High School, testified that Snyder ISD did not have a specific rule regarding hair length for the general student population. (It did have a rule that boys could not wear earrings.) For boys in sports, Snyder ISD gave coaches the authority to set standards about the hair length of boys on their teams. Snyder ISD also regulated skirt lengths for girls. Paterson testified that if a boy showed up in school in a dress, he would be presumed disruptive and be asked to change his attire. He did not think that it would be wise to have a different standard for students merely because they were eighteen years old.

Joe Marlett, principal of Sweetwater High School, testified that his school board did not regulate boys' hair length but distinguished between the sexes as to earrings. Boys could wear a stud but not dangling earrings; girls could wear dangling earrings. As to the disparity of rules between the different school districts, Marlett testified that "local policy would govern what is best for their particular school district" and that each school district's regulations represent the societal values of a particular locale. He added that what may be appropriate and in good taste in one district may not be in another.

Raymond Hollis, the superintendent of schools at Westbrook ISD, testified that although his schools' grooming rules do not mention hair length, none of the boys in his schools had hair longer than their collars. Westbrook ISD's grooming rules require that girls' skirts not be shorter than the top of the knee. Hollis indicated that arbitrary rules for hair length and earrings were an important teaching device, which would instill discipline in students by teaching them that there are consequences for not following rules.

James McSwain, the high school principal of CISD, testified about the grooming code in question and about the consequences when a student did not follow the rules. In the high school, about twenty-five or thirty male students had been asked to cut their hair, and only two were suspended from school. McSwain testified that the grooming regulation was the result of "a collaborative effort between community and faculty and students." Ultimately the seven-person school board formulated the policies. McSwain opined that there was a compelling reason for the grooming rules, stating that:

[A] student must comply substantially with the rules of an institution. School has to have rules, obviously, to carry out its business. I think that is part of our responsibility to educate kids. I think it is an educational tool to teach compliance with rules, and that is an integral part of society and is a part of our responsibility to teach students that they must comply with rules even if they don't agree with the rule.

McSwain added that Barber was in a "home-bound" program due to knee surgery, and that he attended classes at school part of the time, but that most of his school work was done at home.

Barber testified that he cut his hair to appear in a community theater play; that he has never served in-school suspension time due to the length of his hair; that because school administrators threatened him twice with in-school suspension because of the length of his hair, he got it cut; and that he had served in-school suspension time twice during his sophomore year (once for leaving school without signing out and once for being tardy four times to his first period class). Barber testified that he brought the lawsuit for the following reasons:

Because I don't feel that four members of a School Board should be able to dictate to an adult student matters of hairstyle, which to me is an expression of individualism and personal freedom. I would like to be free from sexual discrimination.

He also questioned the utility of the hair length and earrings restrictions for males, particularly since they did not apply equally to females. Barber concluded that he wanted to decide for himself the length of his hair and whether and when to wear an earring.

Dwayne Harris, a farmer and member of the CISD school board, testified that the district's grooming regulation corresponds to community values.

Pat Barber, the plaintiff's father who represented his son in this lawsuit, and another attorney testified as to attorney fees.

The foregoing testimony was the sum total of Barber's case.

The defendant, CISD, elicited the testimony of Dr. Edwin Headrick, a professor of psychology at Abilene Christian University. The professor testified that now, more than ever, due to the breakdown of the family, it is important that schools teach students how to live in society. He explained that rules such as the grooming regulation at issue are one way to teach students discipline and respect for authority, as well as personal grooming and hygiene. Headrick stated that rules differ with the community standards of each locale, and that students need to learn how to comply with rules of which they do not approve. He concluded that CISD's grooming rules were an important part of the educational process.

The trial court held that the hair and earrings provisions of CISD's grooming code violated the state Equal Rights Amendment, TEX. CONST. art. I, § 3a, and the constitutional rights to freedom of expression, to an education, and to privacy. It issued an injunction against CISD to prohibit the district from enforcing the regulation as to its adult male students. The trial court also awarded Barber $13,600 in attorneys' fees. The court of appeals reversed and rendered a take-nothing judgment against Barber. 864 S.W.2d at 808. It held that Barber's cause of action did not justify judicial intervention in CISD's enforcement of the grooming code. *Id.* at 807.

■ The trial court rendered judgment solely on the Equal Rights Amendment, TEX. CONST. art. I, § 3a. It filed findings of fact and conclusions of law. The finding of fact most relevant to the ultimate issue is as follows:

C.I.S.D.'s dress and grooming code objectives, enumerated above, may be accomplished by many reasonable means other than the gender-based discrimination expressed in said regulations. All of the credible testimony and other credible evidence establishes that said regulations are not reasonably necessary for the accomplishment of said objectives, and any evidence to the contrary is specifically found to be not credible.

The finding is one of mixed law and fact, and we are obliged to decide de novo the issues of law. *See generally Richards v. League of United Latin Am. Citizens,* 868 S.W.2d 306, 310–12 (Tex.1993).

■ Barber's claims do not manifest such an affront to his constitutional rights as to merit our intervention in this case. *See Ferrell v. Dallas Ind. Sch. Dist.,* 392 F.2d 697, 702–04 (5th Cir.1968) (finding that a school district's high school grooming code did not violate the state or federal constitution). The Fifth Circuit Court of Appeals has a bright line rule for federal district courts in Texas, Louisiana, and Mississippi to apply in these matters. The Fifth Circuit differentiates between college and high school settings. *Compare Karr v. Schmidt,* 460 F.2d 609, 611 (5th Cir.1972) (stating that a high school student's "asserted right to be free of school regulations governing the length of his hair is one that is not cognizable in federal courts"), *cert. denied,* 409 U.S. 989, 93 S.Ct. 307, 34 L.Ed.2d 256 (1972), *with Lansdale v. Tyler Junior College,* 470 F.2d 659, 663 (5th Cir.1972) (en banc) (disapproving enforcement of a junior college's grooming code and stating, "the place where the line of permissible hairstyle regulation is drawn is between the high school door and the college gate"), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2268, 36 L.Ed.2d 964 (1973). It concludes that at the **college** level, a school's asserted educational and disciplinary needs do not justify grooming codes absent exceptional circumstances.

■ Because the constitutional rights of students in public high schools are not coextensive with the rights of adults in other settings, *see New Jersey v. T.L.O.,* 469 U.S. 325, 339, 105 S.Ct. 733, 741–42, 83 L.Ed.2d 720 (1985) (easing Fourth Amendment requirements to balance a student's rights against school officials' substantial interest in maintaining discipline), we agree with the Fifth Circuit's sensible approach when reviewing grooming codes in high schools.

It is a matter of common sense that the state judiciary is less competent to deal with students' hair length than a parent, school board, administrator, principal, or teacher. A similar case arose more than twenty years ago in El Paso, Texas, and the Fifth Circuit drew a similar conclusion with regard to the federal judiciary. In *Karr,* the court noted:

> There can, of course, be honest differences of opinion as to whether any government, state or federal, should as a matter of public policy regulate the length of haircuts, but it would be difficult to prove by reason, logic, or common sense that the federal judiciary is more competent to deal with hair length than are the local school authorities and state legislatures of all our 50 States.

460 F.2d at 611.

Mr. Justice Black, in denying the stay of an injunction that would have barred the El Paso school authorities from enforcing the grooming policy, wrote words that ring true today:

> [T]he record ... [is] calculated to leave the impression that this case over the length of hair has created or is about to create a great national "crisis." I confess my inability to understand how anyone would thus classify this hair length case. The only thing about it that borders on the serious to me is the idea that anyone should think the Federal Constitution imposes on the United States courts the burden of supervising the length of hair that public school students should wear.

*Karr v. Schmidt,* 401 U.S. 1201, 1202–03, 91 S.Ct. 592, 593, 27 L.Ed.2d 797 (1971). This statement is no less applicable to the Texas Constitution and state courts.

In *Mercer v. Board of Trustees,* 538 S.W.2d 201, 206 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.), a high school student challenged a school grooming regulation similar to CISD's under the state Equal Rights Amendment, and sought to en-

join enforcement of the regulation. After obtaining no relief in the trial court, he appealed to the court of appeals which refused to intervene. That court noted that elementary and high school students:

are in a formative period of their lives wherein their values are being established by parents, church, and school. All may reasonably establish rules of conduct arising out of the relationship without intervention of the courts.

*Id.* at 206. The student in *Mercer* appealed to this Court. Without issuing an opinion, we also refused to intervene. We subsequently cited *Mercer* with approval in *Eanes Indep. Sch. Dist. v. Logue,* 712 S.W.2d 741, 742 (Tex.1986), in which we directed a trial judge to rescind an order affecting how three high schools conducted their extracurricular sports programs.

■ Although minors have constitutional rights, they do not have the same constitutional rights as adults. *See, e.g., In re J.T.H.,* 779 S.W.2d 954, 956 (Tex.App.—Austin 1989, no writ) (holding that a statute allowing the imprisonment of juveniles without presenting an indictment was valid under the state and federal constitutions); *Strange v. State,* 616 S.W.2d 951, 953 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ) (holding that minors do not have a constitutional right to a jury trial in the adjudicative stage of a juvenile proceeding); Diamond, *The First Amendment and Public Schools: The Case Against Judicial Intervention,* 59 TEX.L.REV. 477, 489 (1981) (discussing *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), which held that minors do not have the right to a jury trial in criminal proceedings against them). In *Bellotti v. Baird,* 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979), the United States Supreme Court explained the purpose for the distinction between the constitutional rights of minors and adults as follows:

We have recognized three reasons justifying the conclusion that the constitutional rights of children cannot be equated with those of adults: the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner;

and the importance of the parental role in child-rearing.

*Id.* at 634, 99 S.Ct. at 3043 (plurality opinion). Consequently, the state has more control over the conduct of minors than it does over adults. *Ginsberg v. New York,* 390 U.S. 629, 638, 88 S.Ct. 1274, 1280, 20 L.Ed.2d 195 (1967) (quoting *Prince v. Massachusetts,* 321 U.S. 158, 170, 64 S.Ct. 438, 444, 88 L.Ed. 645 (1944)).

For all of these reasons, we affirm the judgment of the court of appeals.

GAMMAGE, Justice, dissenting.

The majority summarily dismisses Austin David Barber's constitutional claims without the benefit of legal analysis and fails to find that CISD's hair-length regulation implicates the Texas Equal Rights Amendment. It is wrong for several reasons.

First, Barber pleaded his case exclusively on state constitutional grounds. He brought this suit against CISD because the high school's "hair code" restrictions, which apply only to male students, violated his constitutionally protected rights of privacy and symbolic speech, and freedom from gender discrimination under the Texas ERA. (Although Barber's privacy and free speech claims under the Texas Constitution are significant, I would dispose of this case on the grounds clearly presented by the Texas ERA.) Second, the CISD regulation reads:

Boys may wear hair to the bottom of the collar, the bottom of the ear and combed out of the eyes. Boys may not wear earrings of any kind.

This regulation, on its face, provides for different treatment of males and females. "Any classification based upon sex is a suspect classification and any law or regulation that classifies persons for different treatment on the basis of their sex is subject to strictest judicial scrutiny." *Mercer v. Board of Trustees, North Forest Ind. Sch. Dist.,* 538 S.W.2d 201, 206 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). Because this regulation is facially discriminatory and Barber brought his cause of action for gender discrimination, we must apply an ERA analysis.

Article I, section 3a of the Texas Constitution mandates that "[e]quality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin." The Texas constitution provides broader protection than federal law in matters of gender discrimination because the Texas Equal Rights Amendment "is more extensive and provides more specific protection than both the United States and Texas due process and equal protection guarantees." *In re Mc-Lean*, 725 S.W.2d 696, 698 (Tex.1987). Our jurisprudence recognizes gender as a suspect classification in this state. *Id.; see also Maloy v. City of Lewisville*, 848 S.W.2d 380 (Tex.App.—Fort Worth 1993, no writ); *Williams v. City of Fort Worth*, 782 S.W.2d 290 (Tex.App.—Fort Worth 1989, writ denied); *In re Baby Girl S.*, 628 S.W.2d. 261 (Tex.App.—Eastland 1982, writ refd n.r.e.); *Mercer v. Board of Trustees, North Forest Ind. Sch. Dist.*, 538 S.W.2d 201 (Tex.Civ. App.—Houston [14th Dist.] 1976, writ refd n.r.e.). We recognize that "[t]he first step in a case invoking this provision is to determine whether equality under the law has been denied.... Our next inquiry is whether equality was denied *because of* a person's membership in a protected class of sex, race, color, creed, or national origin." *McLean*, 725 S.W.2d at 697.

The school district acknowledges that its restriction prohibiting hair extending over a student's collar applies only to males. Accordingly, under the strict scrutiny we must give a gender-based code, regulation or rule, a governmental entity must demonstrate that it has a compelling state interest in discriminating on the basis of gender which cannot be achieved in any other manner. Here, the district maintains that it is sufficient reason to discriminate against male students, if, as the Colorado I.S.D.'s Code of Conduct handbook states, the purpose in regulating the hair length of only males is "to teach grooming and hygiene, instill discipline, prevent disruptions, avoid safety hazards, and teach respect for authority." At trial and in argument, the school district admitted that what might be its sole compelling interest for this rule is preventing disruptions that long hair on male students may cause. Counsel for the school district, however, conceded before this Court that the district offered no evidence and made no attempt to prove that long hair on male students caused any disruption within the schools. To the contrary, in the words of the district's own counsel:

> [T]he only thing we can do to disprove or prove a compelling point on this matter is to prove disruption. How can you do that? A long-haired student is just as peaceful, he's a good athlete, good academic, he sits in the back row and does just as good a job as everybody else in that classroom. How DO WE PROVE THAT THAT IS DISRUPTIVE? WE CAN'T.

Other courts addressing school districts' arguments that long hair on male students is disruptive have also noted:

> Educators testifying for the defendants stated that in their *opinions* long hair on male students *could* be disruptive, and, thus, they believed the maximum hair length rule to be necessary to promote the educational process. As we read the record, none of these defense witnesses documented a factual basis for his opinion that there was any *cause and effect* relationship between short hair and better education or between long hair and inferior education.

*Neuhaus v. Federico*, 12 Or.App. 314, 505 P.2d 939, 945 (1973) (emphasis in original).

Nor are the hair-length restrictions even rationally related to the goals of promoting safety and hygiene. "[A]lthough girls engage in substantially the same activities in gym and biology classes, only boys have been required to cut their hair in order to attend classes.... [D]efendants have offered no reasons why health and safety objectives are not equally applicable to high school girls." *Crews v. Cloncs*, 432 F.2d 1259, 1266 (7th Cir.1970). CISD's argument that its policy promotes grooming and hygiene among the entire student body is suspect because the regulation only addresses the length of a male student's hair, not its style or cleanliness. *See Neuhaus*, 505 P.2d at 945. Because CISD can offer no proof that any purported objectives of educational policy are met by regulating the hair length of male students only, the hair-length rule cannot survive even minimum rationality scrutiny.

Finally, CISD's grooming policy fails the minimum scrutiny of a rational basis test because it significantly intrudes into the private lives of students with proportionately little justification.

[W]hile the intention of such a rule is to control hair length during school hours, its necessary effect is to control hair length for 24 hours a day and out-of-school activity is therefore regulated more than is in-school activity. Since hair cannot, in the nature of things, be short at school and yet the length preferred by a student and his parent at other times, this rule is more akin to a regulation forbidding students from attending parties in the evening, than one prohibiting metal shoes in a school building.... A rule imposing such a significant invasion into the private lives of children and their parents requires a showing of greater justification and demonstrable need by the school board than one regulating purely in-school appearance, such as a rule about lengths of skirts.

*Independent Sch. Dist. No. 8 of Seiling, Dewey County v. Swanson,* 553 P.2d 496 (Okla.1976.); *see also Neuhaus, supra.* CISD's argued justification for this dramatic incursion into male students' private lives is too unsubstantial to support the legitimacy of its hair-length policy.

The school district admittedly cannot prove that this gender-based discriminatory hair length rule could meet even the much less stringent standards of a rational basis test. It argues, instead, that the rule is a mandatory "teaching device," reflecting "the community's societal values. It's harder for a person in Colorado City, Texas to get a job if they have long hair." The majority of this Court chooses, without the requirement or offer of any proof, to accept this specious explanation for a gender-based, discriminatory regulation without any concern for its infringement of constitutionally guaranteed personal liberties. While dress and grooming codes do not, per se, violate the constitution, they must be based upon compelling educational goals and may not be arbitrary and without foundation in furthering the educational mission of schools or avoiding disruptions. By its own admission, CISD's gen-

der-based hair-length rule is "arbitrary" and does not achieve the rule's purported educational goal. This provision of the grooming code, consequently, cannot withstand analysis under the Texas Equal Rights Amendment.

A school district is not an autonomous branch of government; it is a creation of the Legislature—a political subdivision of the State. TEX. CONST. art. 7, §§ 1, 3 (Vernon's 1993) and TEX.REV.CIV.STAT.ANN. arts. 2656, 2780. It is axiomatic that a school district has only those powers granted it by the Legislature, and the Legislature cannot grant to school districts powers which it does not itself possess. The Legislature has no power to act in violation of the constitution and it may not grant Colorado Independent School District's Board the power to do so. Where a school board acts, it acts on behalf of the state, and its actions are those of the state.

The school districts of this state are charged with an educational mission, and are endowed by the Legislature with the necessary constitutional authority to perform that mission. The Colorado I.S.D. School Board neither argues nor offers any evidence that this gender-based rule contributes to or is in any way calculated to aid in accomplishing that mission. The constitution exists to establish a form of government, provide for its operations, and to protect citizens from government intrusions upon their rights and liberties. Because public school districts are institutions of government and legislatively-created political subdivisions of the state, school district action is government action and, absent some permissible bases founded upon an adequate standard, government may not violate constitutional prohibitions or intrude upon citizens' constitutionally protected liberties.

The majority also inappropriately adopts the Fifth Circuit Court of Appeal's judicial nonintervention policy in grooming code cases. This Court is properly reluctant to intervene with the "heavy hand of justice" in local school matters. But when the heavy hand of local government arbitrarily discriminates against its citizens in violation of constitutionally guaranteed limitations, and is challenged by its citizens in our courts, the

courts are required to respond. As the majority notes, the Fifth Circuit Court of Appeals has declined to act on challenges to school grooming codes. *See Ferrell v. Dallas Ind. Sch. Dist.*, 392 F.2d 697 (5th Cir.1968). This case is not a federal cause of action, however, but was brought in Texas courts under the Texas Constitution. We are aware that some state courts adopt wholesale the federal judiciary's approach to federal constitutional issues in interpreting their own state constitutions, disregarding whether their state constitutions contain the same clauses or provisions as the federal constitution. Hans A. Linde, *State Constitutions Are Not Common Law: Comments on Gardner's Failed Discourse*, 24 Rutgers L.J. 927, 928 (1993). But state courts *are not* bound to follow the analysis or approach of federal courts, and state governments *are* bound by the constraints of their own constitutions which may exceed federal constitutional limits on government action. "We are not a branch of the federal judiciary; we are a court created by the Constitution of [this state] and we owe our primary obligation to that fundamental document." *Sands v. Morongo Unified Sch. Dist.*, 53 Cal.3d 863, 281 Cal.Rptr. 34, 60, 809 P.2d 809, 835 (1991) (Mosk, J., concurring). In fact, this Court recognizes that "federal precedent is not controlling when considering a case under the Texas Equal Rights Amendment.... [N]o federal constitutional counterpart exists, efforts to secure ratification of a national E.R.A. having met with a lack of success.... We decline to give the Texas Equal Rights Amendment an interpretation identical to that given state and federal due process and equal protection guarantees." *In re McLean*, 725 S.W.2d at 697. The court in *Mercer* recognized the inappropriateness of applying a federal analysis to an identical case expressly because "the present claim is based on a provision of the Texas Constitution that is not contained in the United States Constitution.... Therefore, appellants' claim must stand or fall on an interpretation of the ERA contained in the Constitution of the State of Texas." *Mercer*, 538 S.W.2d at 203.

Even the court in *Karr v. Schmidt*, 460 F.2d 609 (5th Cir.1972), decided before the ERA was enacted, acknowledged that state legislatures are more competent to address local issues such as hair-length regulation than is the federal judiciary. By enacting the Texas ERA, the legislature and the people of Texas codified the state's intolerance of gender discrimination. Because our constitution, unlike the federal constitution, specifically prohibits gender discrimination, we cannot properly utilize a federal approach in this case. As the state's highest court, we are bound to enforce the Texas Constitution's mandate under the ERA. We consequently must decline to follow the Fifth Circuit Court of Appeals' policy of judicial inaction in school grooming challenges when properly brought under our state constitution.

Of the fifteen other American jurisdictions having such provisions in their constitutions, none have been called upon to decide this issue under their respective state ERAs [1]. This is because, in most cases, before those states' ERAs were enacted, their respective state or federal district courts had already found alternative grounds for invalidating gender-based hair-length restrictions. For example, the Supreme Court of Alaska held that such regulations violated students' rights under the state constitution because schools had no compelling interest in regulating hair length. *Breese v. Smith*, 501 P.2d 159 (Alaska 1972). Consequently, future litigants were not compelled to invoke the states' ERAs because the prohibited practices had already been dealt with under lesser degrees of constitutional scrutiny. (Presumably, one of the purposes of enacting state equal rights amendments is to provide greater protection against gender discrimination by elevating the standard of judicial constitutional scrutiny.) *See also Richards v. Thurston*, 424 F.2d 1281 (1st Cir.1970) (invalidating hair-length restriction under a personal liberty analysis); *Massie v. Henry*, 455 F.2d 779 (4th Cir.1972) (striking grooming code for lack of rational basis).

---

**1.** The jurisdictions with equal rights amendments in their state constitutions are Alaska, Colorado, Connecticut, Hawaii, Maryland, Massachusetts, Montana, New Hampshire, New Mexico, Pennsylvania, Utah, Virginia, Washington, and Wyoming, as well as Puerto Rico.

"The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." *Shelton v. Tucker,* 364 U.S. 479, 487, 81 S.Ct. 247, 251, 5 L.Ed.2d 231 (1960). School officials, like all other public officials, must exercise their delegated authority within constitutional boundaries. The majority has nevertheless chosen to overlook CISD's unconstitutional exercise of authority by attempting to characterize this case as one involving nonconstitutional issues and by summarily determining that the hair-length rule meets a rational basis test without the benefit of any proper analysis. One would hope that no other prohibited form of invidious discrimination based on an immutable characteristic would be similarly tolerated by this Court, even with respect to grooming rules. Hopefully this Court would not adopt the position that judicial intervention would be improper if a school board promulgated a regulation which read: "Hispanic–American students may wear hair to the bottom of the collar, the bottom of the ear and combed out of the eyes. Hispanic–Americans may not wear earrings of any kind." Surely such a rule would be acknowledged as an outrage by this court because it facially discriminates on the basis of ethnicity. The majority, however, adopts an inappropriate extrajudicial nonintervention policy in school grooming code cases which would allow this facially unconstitutionally discriminatory regulation to survive. Such a court-made policy not only fails to protect students from unwarranted government infringements upon their constitutionally guaranteed rights, but also fails even to teach them the "lesson" that CISD proclaims as invaluable to its students; that is, "that the local employer in Colorado City or Blockbuster in Dallas doesn't conform to the constitution." (Oral argument of Tom Rees, counsel for CISD, November 16, 1994)

By its decision today, the majority renders meaningless the action of the people of Texas in placing the ERA in their state constitution, engaging in nothing less than the gratuitous judicial nullification of an act of the people of Texas and totally disregarding their expressed constitutional will by simply defining it out of existence. CISD's grooming code unconstitutionally discriminates against the District's male students in violation of the Texas Equal Rights Amendment.

Baseless and irrational discrimination in all its forms, at whomever directed and whatever its source or motivation, is still baseless and irrational discrimination. In a free society we may not always be able to prevent its private exercise, but in Texas our fundamental law does not permit it in our public schools and other governmental institutions. They should not teach it, condone it, or engage in it, and our courts and other legal institutions should not—even passively and benignly—enforce it. I dissent.

SPECTOR, Justice, dissenting.

Gender bias is not a trivial matter. Just last year, this Court appointed a committee to implement recommendations for the elimination of gender bias in the Texas legal system.[1] Today, this same Court turns its back on an indisputable finding of sex discrimination, and unashamedly proclaims that such matters are not worthy of this Court's consideration. I dissent.

Under the policy at issue, the Colorado Independent School District removes from its classrooms any male students that wear their hair below the bottom of the collar or the bottom of the ear. The trial court found that this policy discriminates against adult male students solely on the basis of gender, and that it is "totally unrelated to the proper objectives of the operation of public high schools."

The court of appeals did not dispute that the school district's policy is unconstitutional. It decided, however, that school districts have broad authority to impose unconstitutional policies, and that "the judiciary should not intervene" in such matters. 864 S.W.2d 806, 807. This Court today upholds this decision, immunizing the school boards of Texas from claims of gender discrimination.

---

1. Order Appointing Gender Bias Reform Implementation Committee, Misc. Docket No. 94–9175

(Oct. 18, 1994).

Since 1972, the Texas Constitution has included an Equal Rights Amendment providing that "[e]quality of the law shall not be denied or abridged because of sex, race, color, creed, or national origin." TEX. CONST. art. I, § 3a. I agree with Justice Gammage that this provision requires a reversal in this case.

In the majority's view, the Equal Rights Amendment simply does not apply to school boards—particularly if the rights at stake are related to gender. To the members of the class in the present case, the majority explains that claims of gender discrimination "do not manifest such an affront to [their] constitutional rights as to merit our intervention in this case." *Supra* at 450.

This view cannot be reconciled with the mandate of the Equal Rights Amendment. The adoption of the ERA reflects this state's commitment to the principles of tolerance, respect for others, and equality under the law. The school district's policy is at odds with all of these ideals.

The school district does not claim that its policy guards against gang activity, or avoids disruption of the educational process in any way. Instead, it asserts that the policy is a device that "teaches the community's societal values."[2] According to the district, students must learn that a private employer has "the right to be irrational":

> If [a student] walks out of our school system with the naive opinion that everybody has to comply with the constitution, we haven't taught him everything there is about the real world.[3]

Thus, the school district's position is that the very irrationality and unconstitutionality of the policy teach the important lesson of obedience to arbitrary rules, and that judicial interference hinders the teaching of that lesson.

The only real lesson taught by the school district's policy—and, for that matter, by today's decision—is that local school officials are free to make arbitrary distinctions based solely on gender. Young Texans will thus

learn that gender stereotypes have this state's blessing. The Constitution may appear to say otherwise; but in reality, the law is irrelevant.

Until we start taking gender bias claims seriously, the Texas ERA will never have the effect it was meant to have. For the present, we can only hope that the school boards of Texas will show greater respect for individuals' rights under the ERA than this Court has shown today.

---

**2.** Oral argument of T.L. Rees, Sr., counsel for Colorado Independent School District, November 16, 1994.

