Toungate 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-95-00200-CV








Bastrop Independent School District Board of Trustees, Appellant




v.




September M. Toungate, Individually and as Next Friend


of Zachariah Toungate, a Minor, Appellee









FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT


NO. 19,904, HONORABLE NORMAN LANFORD, JUDGE PRESIDING








 Appellee September Toungate, on behalf of her minor son Zachariah, sought
declaratory and injunctive relief in district court against appellant Board of Trustees for the
Bastrop Independent School District ("the Board") after the Board suspended Zachariah for the
length of his hair. Toungate argued that the Board discriminated against Zachariah on the basis
of his gender because the Board's grooming policy permitted girls but not boys to wear long hair. 
The district court rendered judgment in favor of Toungate, granting declaratory relief, an
injunction, and an award of attorneys' fees. The Board now appeals the district court's judgment. 
We will affirm.



THE CONTROVERSY


 The relevant events in this appeal took place during the 1990-91 school year. At
that time, Zachariah Toungate was an eight-year old, third-grade student at Mina Elementary in
the Bastrop Independent School District. For that school year, the Board had adopted the
following grooming rule:



Boys' hair must meet the following guidelines: The rear length must be no longer
than to the bottom of a regular shirt collar. On the sides, the ear lobe must be
visible. In the front, the length cannot be longer than the top of the eyebrows.



The Board concedes that this rule did not apply to girls.

 Zachariah's hair style in the Fall of 1990 violated the Board's grooming rule
because it included a thin pony-tail that extended below his rear shirt collar. After Zachariah
came home with a note from his school stating that he was not in compliance with the grooming
code, Toungate scheduled a meeting with Rebecca Smith, Zachariah's principal. When Smith
informed Toungate that Zachariah's hair violated the grooming code, Toungate said she would
not force Zachariah to cut his hair. Toungate offered to pin Zachariah's pony-tail above his collar
or have him tuck it inside his shirt. Smith refused to deviate from the dress code and told
Toungate that Zachariah could not return to school until he cut his hair.

 After Zachariah had been suspended for approximately three days, Smith informed
Toungate that Zachariah should return to school to begin his in-school suspension ("ISS"). While
in ISS, Zachariah was isolated from other students. He received his lessons from a substitute
teacher in a twelve-by-fifteen foot room in which the only windows were blocked by heavy paper. 
Zachariah had to eat lunch alone, take recess alone, and was not allowed to participate in physical
education, music classes, or any other extracurricular activities, including the school's winter
holiday program in December 1990. After the school kept Zachariah in ISS for approximately
four months, Toungate began home-schooling her son on the advice of a psychologist.

 Toungate sued the Board in district court, seeking injunctive and declaratory relief
against continued enforcement of the Board's hair-length rule, as well as compensatory and
punitive damages for mental anguish. Toungate argued that the Board's rule discriminated against
Zachariah on the basis of his gender in violation of the Texas Equal Rights Amendment ("ERA")
and a Texas anti-discrimination statute. See Tex. Const. art. I, § 3a; Tex. Civ. Prac. & Rem.
Code Ann. § 106.001(a) (West 1986). In October 1991, the district court granted summary
judgment in favor of the Board on all claims. On appeal, this Court affirmed the portion of the
judgment denying the damage claims on the basis of governmental immunity, but reversed and
remanded the constitutional and statutory discrimination claims for factual development at trial. 
Toungate v. Bastrop Indep. Sch. Dist., 842 S.W.2d 823, 828-29 (Tex. App.--Austin 1992, no
writ). Following a jury trial in 1994, the district court rendered judgment in favor of Toungate,
enjoined enforcement of the hair-length rule, and declared that the rule violated both the anti-discrimination statute and the Texas ERA. The court also awarded attorneys' fees to Toungate
under the authority of the Texas Declaratory Judgment Act. See Tex. Civ. Prac. & Rem. Code
Ann. § 37.009 (West 1986). The Board now appeals.



DISCUSSION


 The last twenty-five years have witnessed an explosion of cases in which public
school students have challenged hair-length and grooming regulations. Approximately 120 such
cases were reported by federal courts alone between 1968 and 1988. See Laurence H. Tribe,
American Constitutional Law § 15-15, at 1385 n.14 (2d ed. 1988). As Justice Douglas noted
twenty-three years ago: "Nothing is more indicative of the importance currently being attached
to hair growth than the barrage of cases reaching the courts evidencing the attempt by one segment
of society to control the plumage of another." Ham v. South Carolina, 409 U.S. 524, 529-30
(1973) (Douglas, J., dissenting). School children have increasingly looked to hair length or style
as an important aspect of personal identity, and school boards throughout the country have shown
an intense interest in keeping male hair styles within narrow boundaries. Tribe, supra, § 15-15,
at 1386-87. 

 The adoption of the Texas ERA in 1972 added an important new dimension to the
public school hair-length controversy in this State: gender discrimination. The Texas ERA has
no analogue in the federal constitution. Whereas the federal cases have addressed the issue under
the rubric of the student's right to personal liberty, (1) the Texas jurisprudence has focused on the
question of gender discrimination against male students. See Mercer v. Board of Trustees, 538
S.W.2d 201, 203 (Tex. App.--Houston [14th Dist.] 1976, writ ref'd n.r.e.). This appeal is one
such gender discrimination case. Toungate asks us to hold that the Board's hair-length rule
discriminated against Zachariah, on the basis of his gender, in violation of the Texas Constitution
and a Texas civil rights statute. We will consider each of Toungate's arguments in turn.



A.  Constitutional Claim

 Toungate argues that the Board's rule violates the Texas ERA, which provides: 
"Equality under the law shall not be denied or abridged because of sex, race, color, creed, or
national origin." Tex. Const. art. I, § 3a. The Board responds that Toungate's ERA claim is
foreclosed by the Texas Supreme Court's recent decision in Barber v. Colorado Independent
School District, 901 S.W.2d 447 (Tex. 1995).

 In Barber, the supreme court considered a high school student's challenge to a
similar hair-length rule. The plaintiff, Austin Barber, was an adult student who brought a class
action to challenge the rule under the ERA. Id. at 447. In rejecting Barber's claim, the supreme
court declined to perform a constitutional analysis and refused to determine whether the rule
violated Barber's rights under the ERA. Instead, relying on long-standing Fifth Circuit
precedent, (2) the court enunciated a bright-line rule of abstention: no Texas court may act on an
ERA challenge to a hair-length rule promulgated by a public primary or secondary school. Id.
at 450. The supreme court reasoned that grooming rules for public school students must be
resolved by school officials or parents. Id. Accordingly, the court held that hair-length rules in
public primary and secondary schools do not warrant judicial intervention because courts cannot
"use the Texas Constitution to micro-manage Texas high-schools." Id. at 447.

 We find significant distinctions between Barber and this appeal. One is the
important question of parental rights. Austin Barber was an adult high school student, not a
minor. Though Barber's father, an attorney, assisted him in the litigation, Barber stood as the
lead plaintiff in his own right, not through his parents. Therefore, the question of the rights
accorded to Barber's parents never arose. In this appeal, however, Zachariah Toungate is a
minor, and he appears only through his mother as next friend. This appeal can therefore be
distinguished from Barber because it raises the important question of Toungate's right to direct
Zachariah's upbringing.

 The issue of parental rights is particularly significant given the supreme court's
primary reason for its decision in Barber. The linchpin of Barber is the proposition that parents
or local school officials should resolve questions of hair length, not the judiciary: "It is a matter
of common sense that the state judiciary is less competent to deal with students' hair length than
a parent, school board, administrator, principal or teacher." Id. at 450. In this appeal, as in
many situations, parents and school officials do not always agree on the best course of action for
the child. Unless the judiciary resolves these disputes between parents and school officials, the
power to make decisions, including those of constitutional magnitude, will automatically be vested
in school officials alone. Such a result is particularly troublesome in a situation, such as this
appeal, that involves the bodily integrity of the child. (3)

 The wishes of parents and school administrators may also conflict on a number of
important issues, such as corporal punishment, compulsory education, and compulsory
vaccination. Although courts normally accord considerable discretion to school boards in these
areas, they have nevertheless addressed compelling constitutional issues presented by parents. 
See, e.g., Ingraham v. Wright, 97 S. Ct. 1401 (1977) (corporal punishment); Jacobson v.
Massachusetts, 197 U.S. 11 (1905) (compulsory vaccination); Itz v. Penick, 493 S.W.2d 506
(Tex. 1973) (compulsory vaccination); Hutton v. State, 5 S.W. 122 (Tex. Crim. App. 1887)
(corporal punishment). The importance of judicial action on these issues cannot be disregarded
when parents' rights do occasionally trump government decisions. See, e.g., Wisconsin v. Yoder,
406 U.S. 205, 234-35 (1972) (parents' right to free exercise of religion trumped state compulsory
education law); Pierce v. Society of Sisters, 268 U.S. 510, 534 (1925) (parents may choose private
school instead of public school).

 This appeal may also be distinguished from Barber because of the drastic difference
in the treatment of the two students. Zachariah Toungate's lengthy suspension in this appeal was
far more onerous and intrusive than the Colorado I.S.D. Board's treatment of Austin Barber. 
Barber was never suspended from school, and the two brief periods he spent in ISS were unrelated
to his grooming. Furthermore, Barber voluntarily agreed to cut his hair to appear in a community
theater play. Barber, 901 S.W.2d at 449. In that factual context, Barber did not present a
sufficient "affront to his constitutional rights" to merit judicial intervention. Id. at 450. 
Zachariah Toungate, who steadfastly refused to cut his hair, suffered a much more serious assault
on his rights: the Board placed him in ISS for four months solely because of his hair length. The
trial judge characterized ISS as tantamount to solitary confinement. Zachariah's educational
experience shrank to a stigmatizing isolation and deprivation of all social activities. The
experience had such a detrimental psychological impact on Zachariah that, on professional advice,
Toungate removed him from public school altogether. Zachariah received far harsher treatment
than did Austin Barber.

 We find these distinctions between Barber and this appeal significant. However,
the supreme court in Barber clearly held that the Texas judiciary may not act on an ERA
challenge to a hair-length rule imposed by a public primary or secondary school board. Id. at
447. The distinctions discussed above do not warrant a departure from the clear holding of
Barber, and we are bound to follow it in this appeal. Because Barber forecloses Toungate's
constitutional claim, we hold that the trial court erred in granting a declaratory judgment that the
Board's rule violates the Texas ERA.



B.  Statutory Claim

 Toungate next argues that, apart from her constitutional claim, the trial court's
judgment was proper because the Board violated the following provisions of a Texas anti-discrimination statute:



(a) An officer or employee of the state or of a political subdivision of the state
who is acting or purporting to act in an official capacity may not, because of
a person's race, religion, color, sex, or national origin:


 . . . .


 (4) refuse to permit the person to participate in a program owned,
operated, or managed by or on behalf of the state or a political
subdivision of the state;

 

 (5) refuse to grant a benefit to the person [or]

 

 (6) impose an unreasonable burden on the person . . . .



Tex. Civ. Prac. & Rem. Code Ann. § 106.001(a) (West 1986). Toungate argues that the Board
violated each quoted provision of the statute because, by placing Zachariah in ISS for four
months, the Board: (1) refused to let him participate in the regular school program, (2) refused
to grant him the benefit of extracurricular activities, and (3) imposed an unreasonable burden on
him. The Board argues that Barber forecloses Toungate's statutory claim and that, in any event,
Zachariah's ISS was justified by legitimate educational goals.



1.  Viability of the Statutory Claim

 As a preliminary matter, the Board argues that Barber forecloses Toungate's
statutory claim in this appeal. The Board reasons that the anti-discrimination statute is nothing
more than a codification of the ERA and therefore must be subject to the abstention rule delineated
in Barber.

 We reject the Board's argument for two reasons. First, the supreme court stressed
in Barber that the broad ERA protection could not be used to challenge a hair-length rule: "We
refuse to use the Texas Constitution to micro-manage Texas high schools." Barber, 901 S.W.2d
at 447 (emphasis added). Toungate, however, presents a claim based on a statute in which the
Texas Legislature has specifically authorized remedies against discrimination by state government
actors. The abstention required by Barber in an ERA challenge is grounded in the concept that
decisions of parents or school officials should prevail over a broad constitutional protection. Id.
at 450. The Barber analysis, therefore, does not apply to the specific and more narrowly drawn
anti-discrimination statute at issue here.

 Second, we reject the Board's argument that we should extend Barber to this
appeal. The statute at issue here is not simply a restatement of the Texas ERA. Before the
codification of the Civil Practice and Remedies Code, the provisions of section 106.001 of the
code were located at article 6252-16 of the revised civil statutes. Article 6252-16 was first passed
in 1967 as a civil rights statute designed to "further implement" the Federal Civil Rights Act of
1964. Act of April 18, 1967, 60th Leg., R.S., ch. 72, § 5, 1967 Tex. Gen. Laws 138, 139
(former Tex. Rev. Civ. Stat. Ann. art. 6252-16, since repealed and codified in relevant part at
Tex. Civ. Prac. & Rem. Code Ann. § 106.001). At the time of its passage, the statute protected
against invidious discrimination on the basis of race, religion, color, or national origin. Former
article 6252-16, § 1. In 1971, the statute was amended to include sex as a protected category. 
Act of June 15, 1971, 62nd Leg., R.S., ch. 989, § 1, 1971 Tex. Gen. Laws 2994. The Texas
ERA was subsequently adopted on November 7, 1972. Tex. Const. art. I, § 3a.

 The history of the statute shows that it was enacted as a state counterpart to the
Federal Civil Rights Act of 1964, many years prior to the adoption of the ERA. Because the
statute has a pedigree independent of the ERA, we hold that the Barber abstention rule does not
apply to Toungate's statutory claim.



2.  Application of the Statute

 In our prior opinion remanding this cause for trial, we addressed the general
parameters of Toungate's claim under the Civil Practice and Remedies Code. See Toungate, 842
S.W.2d at 827. We specifically addressed Toungate's claim, under section (a)(6) of the statute,
that the Board imposed an "unreasonable burden" on Zachariah, on the basis of his gender, by
placing him in ISS. Id. In response to the Board's argument that ISS could not be an
unreasonable burden because it is allowed by statute, we noted that the reasonableness of
punishment must be analyzed on a case-by-case basis because a general statutory authorization
does not necessarily make punishment reasonable in any particular set of circumstances. Id.; see
Tex. Educ. Code Ann. § 21.301(g)(1) (West 1987). The trial court determined that the Board's
treatment of Zachariah was discriminatory and unreasonable under the circumstances of this case.

 We must analyze the trial court's findings to determine whether it erred in holding
that the Board's actions violated the statute. The trial court found that the Board's rule
discriminated against Zachariah on the basis of his gender. The Board conceded that its hair-length rule applies only to boys and not to girls. If Zachariah were a girl, the Board would allow
him to wear the same hair style that led to his suspension. The Board's rule, therefore,
discriminates against Zachariah on the basis of his gender. The Board nevertheless argues that
its action was gender neutral because it punishes every student, male or female, who violates a
grooming rule. The trial court, however, noted that Toungate does not charge the Board with
uneven enforcement of the grooming code as a whole; instead, Toungate argues that the particular
content of the hair-length rule discriminates against boys. We agree with the trial court's sound
analysis of the issue and hold that the Board's hair-length rule discriminated against Zachariah on
the basis of his gender.

 However, the analysis of a gender discrimination claim does not end with a finding
of discriminatory treatment. In our prior Toungate opinion, we noted that the evaluation of a
discrimination claim requires that we weigh the "factors appropriate to the context . . . ." 
Toungate, 842 S.W.2d at 826. In a dispute between a student and a public school board, we must
balance the student's and parents' rights against a general desire to accord broad latitude to school
administrators. Id. We must therefore balance Zachariah's right to be free from gender
discrimination against the Board's legitimate goal of providing a quality education to its students. 
Id. Disruption is the touchstone of this balancing analysis; we must determine whether
Zachariah's assertion of his rights disrupts the Board's legitimate educational goals. Id.; see
Passel v. Fort Worth Indep. Sch. Dist., 453 S.W.2d 888, 892 (Tex. App.--Fort Worth 1970, writ
ref'd n.r.e.).

 The trial court found that the Board imposed an unreasonable burden on Zachariah
because it subjected him to a lengthy in-school suspension although his hair style did not disrupt
or interfere with the Board's legitimate educational goals. The Board placed Zachariah in ISS for
four months. The trial court found that ISS was a form of discipline equivalent to institutional
solitary confinement. (4) The Board placed Zachariah in a small classroom with heavy paper over
the windows. Zachariah was not free to leave the small room. Zachariah was deprived of all
contact with his fellow students and completely prohibited from participating in extracurricular
activities. The trial court succinctly evaluated Zachariah's ISS: "To subject an eight year old to
that isolation for four unbroken months is not only unreasonable as a matter of law, but it is
unconscionable."

 We must balance this heavy burden on Zachariah against any disruption to the
Board's legitimate educational goals. The Board advanced a number of justifications for its hair-length rule, including security, gender identification, socialization, and discipline. The trial court
found that Zachariah's hair style did not frustrate any legitimate educational goals. We examine
each, in turn, as found by the trial court.

 The Board argued that the grooming code was necessary to prevent a proliferation
of gang activity in Bastrop County. The trial court found no evidence to justify the Board's
concern. Zachariah Toungate was in the third grade at the time he was suspended. The Board
failed to connect Zachariah or his hair style with gang activity or to show that gang activity was
a concern for his age group, his school, or even the school district at the time Zachariah was
placed in ISS. That trial court further noted that, even if the threat of gang activity could be
conceded, the Board failed to show that a hair-length rule would be a reasonable response: 
"Without playing down the significant impact real gangs could have on any school district, the
security goal simply cannot be stretched to justify the hair-length rule . . . ."

 The Board next argued that the rule is necessary to properly instill a sense of
gender identity in schoolchildren. The trial court noted that a number of the Board's witnesses
testified that "boys should look like boys and girls should look like girls." We agree with the trial
court that this justification deserves short shrift because it is entirely repugnant to the gender
discrimination protection provided by the statute. The trial court noted that the statement quoted
above is a perfect description of improper gender discrimination. We uphold the trial court's
conclusion that gender identity is not a legitimate educational goal to support the Board's rule.

 The Board argued that the rule may be justified for its "socialization" value. The
trial court found that "socialization" amounted to teaching students to understand that society holds
certain arbitrary norms and rules that must be obeyed for a person to succeed. The trial court
found this goal to be actually counterproductive because it simply teaches a mindless conformity
that is at odds with the tradition of tolerance and diversity in Bastrop County. Even if the need
to teach conformity is acknowledged, however, the Board could have done so by means of rules
that do not also discriminate on the basis of gender. The trial court concluded that the need to
teach conformity cannot be justified "based on something as meaningless as hair length."

 Finally, the Board argued that the rule is necessary to maintain discipline and
prevent disruption in school. The trial court correctly noted that there can be "no debate" over
the need for discipline and an orderly learning environment in public schools. We, too,
acknowledge that a school rule necessary to prevent disruption is entitled to great deference when
challenged. The trial court found, however, that the Board failed to demonstrate that the rule is
necessary to maintain discipline or to prevent disruption. Two witnesses testified that they
thought the rule was necessary for discipline but failed to give any reasonable basis for their
opinions. Several of the Board's trial witnesses admitted that approximately half of the school
districts in Texas do not have hair-length rules, and the trial court found no evidence that those
districts experience a greater incidence of discipline problems. The trial court also specifically
found that the Board failed to show that Zachariah's hair length actually caused any disruption or
adversely impacted school discipline. Zachariah wore the same hair style during the previous
school year without causing any disruption; ironically, the only disruption came after the Board
placed Zachariah in ISS. We also note that Toungate expressed her willingness to pin up
Zachariah's pony-tail or have him tuck it underneath his rear shirt collar while at school. The
trial court stressed that the Board's witnesses seemed uneasy when asked whether elimination of
the rule would create disruption and answered only that it might do so. Though disruption
certainly constitutes a valid justification in theory, the trial court found that the Board failed to
justify a disciplinary concern in this case.

 To justify the heavy burden imposed on Zachariah by its discriminatory rule, the
Board must show at a minimum that the rule actually furthers legitimate educational goals. See
Toungate, 842 S.W.2d at 826. The trial court found that none of the goals offered by the Board
justified the rule. We hold that the trial court's well-reasoned decision and findings are amply
supported by the evidence. (5) We therefore hold that the trial court did not err in finding that the
Board violated section (a)(6) of the statute by imposing an unreasonable burden on Zachariah
Toungate on the basis of his gender.

 The trial court also found that the Board violated sections (a)(4) and (a)(5) of the
statute, which prohibit the Board from refusing to grant a benefit or refusing to allow participation
in a school program on the basis of a student's gender. See Tex. Civ. Prac. & Rem. Code Ann.
§ 106.001(a) (West 1986). As the trial court noted, the Board offers far more than the minimum
educational requirements to its students; the Board's program includes a wide range of
extracurricular activities to supplement the regular curriculum. While in ISS, Zachariah was not
permitted to take part in any such activities. Because the Board offers extracurricular activities
to its students as a matter of course, those activities comprise a part of the regular school
program. Because those activities are offered in addition to the regular curriculum, they are also
a benefit offered by the Board. Consequently, the Board deprived Zachariah of a benefit and
refused to let him participate in a regular school program by placing him in ISS. Therefore, we
hold that the trial court did not err in finding that the Board also violated sections (a)(4) and (a)(5)
of the statute.



CONCLUSION


 Although Barber does not permit judicial intervention in an ERA challenge to
public-school hair length cases, the anti-discrimination statute at issue in this appeal does. We
hold that the Board violated the statute by placing Zachariah Toungate in ISS for four months on
the basis of his gender. Accordingly, we affirm the district court's judgment granting Toungate
declaratory relief on her statutory claim, an injunction, and attorneys' fees.



 

 Mack Kidd, Justice

Before Justices Powers, Aboussie and Kidd

Affirmed

Filed: May 8, 1996

Publish
1.   See Tribe, supra, § 15-15 at 1385-87.
2.   See Karr v. Schmidt, 460 F.2d 609, 611 (5th Cir.) (en banc, divided 8-7), cert. denied,
409 U.S. 989 (1972). In Karr, the Fifth Circuit created a per se rule that public school hair-length regulations are not subject to constitutional challenge. Id. at 617. The court directed
the district courts in all such claims to "grant an immediate motion to dismiss for failure to
state a claim for which relief can be granted." Id. at 618. This abstention doctrine is unique
to the Fifth Circuit; all other circuits pass on public school hair-length rules using a
constitutional standard that varies in its degree of deference to school administrators. Tribe,
supra, § 15-15 at 1388 n.32.


 It is noteworthy that Karr involved only a federal constitutional claim and not a claim
under the Texas ERA. The Texas ERA provision, with its explicit inclusion of sex as a
protected category, has no federal counterpart and has long been interpreted to provide a
higher level of protection against gender discrimination than the Fourteenth Amendment. In re
McLean, 725 S.W.2d 696, 698 (Tex. 1987).
3.   Courts have generally drawn a distinction between school rules affecting only dress
and more intrusive rules requiring an alteration of bodily appearance. "A [hair-length]
rule imposing such a significant invasion into the private lives of children and their
parents requires a showing of greater justification and demonstrable need by the school
board than one regulating purely in-school appearance, such as a rule about lengths of
skirts." Barber, 901 S.W.2d at 453 (Gammage, J., dissenting) (quoting Independent Sch.
Dist. No. 8 of Seiling, Dewey County v. Swanson, 553 P.2d 496 (Okla. 1976)); see also
Neuhaus v. Frederico, 505 P.2d 939, 945 (Or. App. 1973).
4.   The Board's treatment of Zachariah is reminiscent of the plight of Heman Sweatt,
another Texas student who was placed in educational solitary confinement because of a
discriminatory rule. See Sweatt v. Painter, 339 U.S. 629 (1950).
5.   The trial court submitted findings to the jury but rejected the jury's responses as
advisory only.



using to allow participation
in a school program on the basis of a student's gender. See Tex. Civ. Prac. & Rem. Code Ann.
§ 106.001(a) (West 1986). As the trial court noted, the Board offers far more than the minimum
educational requirements to its students; the Board's program includes a wide range of
extracurricular activities to supplement the regular curriculum. While in ISS, Zachariah was not
permitted to take part in any such activities. Because the Board offers extracurricular activities
to its students as a matter of course, those activities comprise a part of the regular school
program. Because those activities are offered in addition to the regular curriculum, they are also
a benefit offered by the Board. Consequently, the Board deprived Zachariah of a benefit and
refused to let him participate in a regular school program by placing him in ISS. Therefore, we
hold that the trial court did not err in finding that the Board also violated sections (a)(4) and (a)(5)
of the statute.



CONCLUSION


 Although Barber does not permit judicial intervention in an ERA challenge to
public-school hair length cases, the anti-discrimination statute at issue in this appeal does. We
hold that the Board violated the statute by placing Zachariah Toungate in ISS for four months on
the basis of his gender. Accordingly, we affirm the district court's judgment granting Toungate
declaratory relief on her statutory claim, an injunction, and attorneys' fees.



 

 Mack Kidd, Justice

Before Justices Powers, Aboussie and Kidd

Affirmed

Filed: May 8, 1996

Publish
1.   See Tribe, supra, § 15-15 at 1385-87.
2.   See Karr v. Schmidt, 460 F.2d 609, 611 (5th Cir.) (en banc, divided 8-7), cert. denied,
409 U.S. 989 (1972). In Karr, the Fifth Circuit created a per se rule that public school hair-length regulations are not subject to constitutional challenge. Id. at 617. The court directed
the district courts in all such claims to "grant an immediate motion to dismiss for failure to
state a claim for which relief can be granted." Id. at 618. This abstention doctrine is unique
to the Fifth Circuit; all other circuits pass on public school hair-length rules using a
constitutional standard that varies in its degree of deference to school administrators. Tribe,
supra, § 15-15 at 1388 n.32.


 It is noteworthy that Karr involved only a federal constitutional claim and not a claim
under the Texas ERA. The Texas ERA provision, with its explicit inclusion of sex as a
protected category, has no federal counterpart and has long been interpreted to provide a
higher level of protection against gender discrimination than the Fourteenth Amendment. In re
McLean, 725 S.W.2d 696, 698 (Tex. 1987).
3.   Courts have generally drawn a distinction between school rules affect